Gorski *v.* Dickson City Borough School District et al., Appellants.

160

Argued March 7, 1955. Before RHODES, P. J., HIRT, ROSS, WRIGHT, WOODSIDE and ERVIN, JJ. (GUNTHER, J., absent).

*Edward A. Reilly*, with him *James G. Colleran*, for appellants.

*John J. Sirotnak*, with him *S. U. Colbassani*, for appellee.

OPINION BY ERVIN, J., April 19, 1955:

This is an appeal by defendants from a decree of the lower court dismissing exceptions to the court's judgment in a mandamus action. At an appellant board meeting on August 28, 1929, appellee, Millicent Mikulski Gorski, together with three other teachers, Mary Reed Reis, Rachel Rosenstein and Margaret McHale, were hired as teachers. On March 1, 1930 appellants hired one Lottie Safinowski as a substitute

teacher and thereafter appointed her as a regular teacher to commence in September 1930.

Except for the dates of hiring, all five teachers held the same type contracts, had the same qualifications and taught continuously until the end of the 1951-52 school term on June 6, 1952.

At a regular meeting of appellant board on July 23, 1952, said five teachers were among six teachers suspended until further notice by appellant board for reasons of economy and because of a decrease in pupil enrollment. There was no difference in the efficiency rating of the said five teachers.

At a meeting of appellant board on August 21, 1952, the school district superintendent, George Turock, was authorized to compile a list of suspended teachers who should indicate their willingness to do substitute teaching and to assign substitute teachers from this list during the ensuing year. Only two suspended teachers, Rachel Rosenstein and Lottie Safinowski, requested substitute work. The appellee did not do so.

Shortly after the beginning of the 1952-53 school term in September 1952, a sixth grade teacher, one Alice Stead, complained to both Superintendent George Turock and to her school principal, John Tylenda, that she was unable, because of ill health, to handle 45 pupils as a class. She requested that she be given some relief from such a group. The average pupil load for other elementary grade school teachers was 25 to 30 pupils. Pursuant to Miss Stead's request, Superintendent Turock, at a meeting of appellant board on September 19, 1952, requested and received from the "teachers committee" of the appellant board, authorization to split Miss Stead's class temporarily, pending her physical condition, and assign a substitute teacher to part of it. No particular teacher was designated.

On October 3, 1952, 20 pupils were taken from Miss Stead's class and were put in a separate room by Superintendent Turock, who at the same time selected Lottie Safinowski from his list of available substitutes and assigned her to teach this group. She was assigned rather than the other teacher on the substitute list because she had more experience in the sixth grade work. From October 3, 1952 to January 27, 1953, the latter date being the end of the first semester, both Alice Stead and Lottie Safinowski taught their respective sections of sixth grade pupils on a full day schedule, each performing all of the duties of a regular teacher toward her group. On or about January 27, 1953 the two sections of the sixth grade were consolidated with the pupils of the fifth grade and departmental teaching was instituted. Under this system, there were 105 pupils rotated among four teachers every day. Lottie Safinowski did not teach under this departmentalization. Under departmental teaching, each teacher teaches only certain subjects to each section of the grades involved and has a free period for rest during the day.

On January 27, 1953, the entire sixth grade class was given back to Miss Stead but she was not required to teach all subjects to all of the sixth grade pupils because of the above mentioned departmentalization of the fifth and sixth grades.

During the time from October 3, 1952 to January 27, 1953, Lottie Safinowski received the pay of a substitute teacher, to wit: at the rate of $2,400.00 per year. Had she been reinstated as a regular teacher, she would have been paid at the rate of $3,100.00 per year. She was carried on the substitute teachers' pay roll, she signed her monthly reports and her report cards with the word "Sub" preceding the printed word "teacher."

Appellee, Millicent Mikulski Gorski, and the aforesaid Mary Reed Reis, Rachel Rosenstein and Margaret McHale, had greater seniority than Lottie Safinowski.

Appellee instituted the present action alleging fraud on the part of the appellants and violation of her seniority rights in the splitting of the sixth grade and the assignment of Lottie Safinowski to a section of said class. Appellants defended on the grounds that Lottie Safinowski was at most a substitute and that there had been no "reinstatement" as would violate appellee's seniority.

The lower court found that although appellants had acted honestly and in good faith, they had nevertheless violated appellee's seniority rights. Appellee was awarded the salary she would have earned from October 3, 1952 to January 27, 1953, or $1,240.00.

We are of the opinion that the decree of the lower court must be reversed because "The law is clear that mandamus lies only when there is a clear legal right in the plaintiff and a corresponding duty in the defendant and only where the act requested is ministerial and not discretionary: . . . ." *Maxwell v. Farrell School District Board of Directors,* 381 Pa. 561, 566, 112 A. 2d 192.

In *Travis v. Teter,* 370 Pa. 326, 87 A. 2d 177, the Court said (page 330) : "[Mandamus] is not a matter of right but in certain circumstances is a matter for the sound discretion of the court: Waters v. Samuel, 367 Pa. 618; 80 A. 2d 848. It is well settled that in a mandamus proceeding a Court can compel a public official who is vested with a discretionary power to exercise that discretion; but (unless the discretion is arbitrarily or fraudulently exercised or is based upon a mistaken view of the law) it cannot interfere with or control the official's discretion or judgment. Expressed another way, it is the discretion and judgment

of the official (who is vested with a discretionary power) which prevails and not that of a Court or a jury or a person aggrieved; and a Court cannot compel such official to exercise his discretion in a manner which will produce a result which the Court may deem wise or desirable: Kaufman Construction Co. v. Holcomb, 357 Pa. 514, 55 A. 2d 534; Tanenbaum v. D'Ascenzo, 356 Pa. 260, 51 A. 2d 757; Anderson v. Philadelphia, 348 Pa. 583, 36 A. 2d 442; Souder v. Philadelphia, 305 Pa. 1, 156 A. 245."

The appellee was one of four suspended teachers, each of whom had equal seniority rights and efficiency ratings. At least one of the three teachers, other than appellee, Rachel Rosenstein, testified that she too was ready, willing, able and available for teaching during the time in question. The record is silent as to the willingness, ability and availability of the other two teachers.

Assuming for the sake of argument only that what the board did in October 1952 amounted to a reinstatement of a regular teacher rather than the employment of a substitute, it had the right to exercise its discretion and could have chosen either Miss Rosenstein or the appellee, each having equal status. There was no duty upon the appellant board to choose appellee. This action of mandamus sought the reinstatement of one of four equally qualified teachers. The granting of the prayer of this action would completely prohibit the appellant from exercising any discretion. This may not be accomplished by an action of mandamus. Assuming that a reinstatement was indicated, the most that could be accomplished by an action in mandamus would be action on the part of the board to make a selection but it could not control the board in the making of that selection. To the same effect see *Tanenbaum v. D'Ascenzo*, 356 Pa. 260, 263, 51 A. 2d 757.

If the appellee is successful in this case, appellants might be exposed to claims by the other three teachers possessing equal status with appellee. Such an event would increase the financial burden of appellants far out of proportion to the benefit to be derived by the appellee. Had the appellants been activated by selfish motives or had fraud been shown, as was alleged by appellee, then appellants could have been charged personally with any loss or losses caused by their actions. But the lower court found as a fact that appellants had acted "honestly and in good faith." Furthermore, should we sustain the action of the lower court, the savings attempted by appellants in suspending six teachers and in closing two school buildings because of the decrease in enrollment would be negatived.

"If public injury or embarrassment might result from the issuance of the writ, the court may properly refuse it. Under the guise of enforcing a public right, the writ will not issue if in fact it will operate to the detriment rather than to the benefit of the general public." 34 Am. Jur. 830, §35.

The appellee argues that the action of the appellant in employing Lottie Safinowski was in violation of appellee's seniority rights. The answer of the appellants to this argument is that Lottie Safinowski (a) was at most only a substitute and (b) if she was not a substitute, she was not "reinstated" within the meaning of the school code so as to violate appellee's seniority rights. The Public School Code of 1949, March 10, P. L. 30, art. XI, §1101, 24 PS §11-1101, is as follows: "Definitions.—

"As used in this article,

"(1) The term 'professional employe' shall include teachers, supervisors, supervising principals, principals, directors of vocational education, dental hygien-

ists, visiting teachers, school secretaries the selection of whom is on the basis of merit as determined by eligibility. lists, school nurses who are certified as teachers and any regular full-time employe of a school district who is duly certified as a teacher.

"(2) The term 'substitute' shall mean any individual who has been employed to perform the duties of a regular professional employe during such period of time as the regular professional employe is absent on sabbatical leave or for other legal cause authorized and approved by the board of school directors or to perform the duties of a temporary professional employe who is absent.

"(3) The term 'temporary professional employe' shall mean any individual who has been employed to perform, for a limited time, the duties of a newly created position or of a regular professional employe whose services have been terminated by death, resignation, suspension or removal."

We are primarily concerned with the second situation set forth in the definition of a substitute which requires that a regular employe be absent and that her absence be for legal cause authorized and approved by the school board. The word "absent" means "not present." There is no requirement that the regular employe be absent from the school building. So long as she is not in the presence of the pupils she is absent. Miss Stead was "not present" in so far as the 20 pupils taken from her were concerned. The first requirement of the definition is therefore fulfilled.

Was Miss Stead absent for legal cause which was authorized and approved by the school board? Appellants felt that illness, though not totally disabling, was a good legal cause, especially in view of the fact that Miss Stead's pupil load was 45 pupils as compared with an average pupil load for other elemen-

tary grade teachers of from 25 to 30 pupils. There are varying degrees of illness. Some work a total disability and some a partial disability which will allow a person to continue some of her normal duties. In the present case Miss Stead and the appellants thought that she could continue to teach if her pupil load were lightened. The superintendent, with the intention of departmentalizing the fifth and sixth grades and being unable to do so when Miss Stead made her original request because of the pressure of other administrative problems in the school district, asked the appellant board, as a stop-gap measure, to allow him temporarily to split Miss Stead's class and assign a substitute to a part of it. This request was granted by the appellants. Since the cause of her absence from the 20 pupils was legal and since it was authorized and approved by the appellant board, the second requirement of the definition of "substitute" is fully met.

The lower court felt that Lottie Safinowski was more than a substitute and reasoned that if it held otherwise "every class in a school district could be divided into two or more parts, teachers assigned with a designated 'substitute classification' and the entire purpose of the Tenure Act defeated and outmaneuvered."

If classes were split and teachers assigned without legal cause by a board, such a conclusion would be tenable but where, as here, a good legal cause (Miss Stead's illness) exists and where the school board, as a reasonable exercise of its discretion, authorizes the splitting of a class temporarily, it is a much different situation and should be treated as such. The situation feared by the lower court can be met and properly dealt with if it arises. The splitting of this class was but a temporary arrangement to deal with an emer-

gency until it could be permanently solved. At the end of the first semester it was permanently solved by the departmentalization of the fifth and sixth grades.

"The vacancy which the Legislature intended a temporary professional employe to occupy is a position to which a teacher will not return. If there were no vacancy *in this sense* then this position was to be filled by a substitute." *Love v. Redstone Twp. School District,* 375 Pa. 200, 204, 100 A. 2d 55.

In the present case Miss Stead did return and became the home room teacher of the 45 pupils on January 27, 1953, the commencement of the second semester. Under the departmentalization then instituted she did continue to teach not only the 25 pupils she had taught during the first semester but also the 20 pupils who had been taught by Lottie Safinowski during the first semester. She did not teach them all subjects but she taught all of them some subjects. Lottie Safinowski did not teach any of the 45 pupils during the second semester.

All of the requirements in the above set forth definition of "substitute" have thus been met.

The appellee's claim must fail for an additional reason. Appellee had the burden of showing that Lottie Safinowski had been reinstated as a "professional employe." To do so she is obliged to show some formal action by the appellant board showing the reinstatement. No such evidence was produced. Lottie Safinowski testified that she was only teaching temporarily as a substitute. The word "reinstate" means to return to a former status; in this case it means to return the teacher to the status she enjoyed prior to her suspension with all the rights and emoluments attendant thereto. Had Lottie Safinowski been reinstated as alleged she would have been paid a minimum

salary of $3,100.00 a year since that would have been her regular pay for the school year 1952-53. Instead she was paid at the rate a substitute would have been paid of $2,400.00 per year. Since Lottie Safinowski was not returned to her former status it cannot be said she was reinstated. She was not acquiring any additional tenure time which would enable her to equal or exceed the tenure time theretofore acquired by appellee. There was no violation of appellee's seniority rights.

We are therefore of the opinion that Lottie Safinowski served as a substitute teacher and that she was not reinstated to her former position as a "professional employe."

The decree of the lower court is reversed; costs to be paid by appellee.

Ross, J. concurs in the result but does not agree that Lottie Safinowski was a substitute teacher within the meaning of the Act.