Department of Transportation v. State Civil Service Commission and Desikachar, Additional Party.
Desikachar v. State Civil Service Commission and Department of Transportation, Additional Party.

Argued March 9, 1972, before Judges CRUMLISH, JR., ROGERS and BLATT, sitting as a panel of three.

Reynold J. Kosek, Assistant Attorney General, with him Edward V. A. Kussy, Assistant Attorney General, Robert W. Cunliffe, Deputy Attorney General, and J. Shane Creamer, Attorney General, for Department of Transportation.

Stephen R. Krone, Dauphin County Legal Service Association, for Desikachar.

OPINION BY JUDGE BLATT, May 1, 1972:

This matter is before the Court on cross appeals from an adjudication and order of the State Civil Service Commission ("Commission"), directing the Penn-

sylvania Department of Transportation ("PennDOT") to restore Satyagalam K. Desikachar ("Desikachar") to the position of Civil Engineer II or III, without back pay.

Desikachar had been employed by PennDOT as a Civil Engineer III, regular status, and he was notified on December 11, 1970 that he was being dismissed. The reasons stated by PennDOT for his dismissal were: ". . . your inability to carry out your assigned duties and responsibilities; your distracting habit of reading aloud which reduced the effectiveness of those working in the squad and the immediate vicinity; your offensive personal body care; and your strange and sometimes erratic behavior." Desikachar appealed to the Commission and a hearing was held on January 20, 1971, at which the attorney for PennDOT suggested that Desikachar's irrational behavior indicated his mental condition to be such as would not enable him to participate fully in the appeal. Desikachar's attorney agreed, and he suggested that arrangements be made by PennDOT for his client to receive treatment. The Commission issued an order, therefore, restoring Desikachar to the PennDOT payroll as of December 14, 1970, but granting him sick leave until February 9, 1971, following which date PennDOT was authorized to place Desikachar on leave of absence if he should so request, for a period not to exceed 90 days.

On May 4, 1971, several days before the expiration of the leave of absence which had been granted, Desikachar was again notified that he was dismissed because he had failed to seek psychiatric help. Upon being informed that Desikachar was in fact receiving psychiatric treatment, PennDOT withdrew its removal order and once more placed him on a 90-day leave of absence.

Finally, Desikachar received another letter of dismissal, this dated August 5, 1971, to be effective immediately following the termination of the second 90-day

leave of absence on August 10, 1971. The reasons given for dismissal were identical to those given the first time. Desikachar, it should be noted, had at no time returned to work since the first dismissal date of December 11, 1970.

Following the third dismissal letter, Desikachar again appealed to the Commission, and a hearing was held on September 15, 1971. The Commission filed an adjudication and order on November 11, 1971, finding that Desikachar had consistently received unsatisfactory performance ratings since attaining regular status, but that, except for the period in which he was assigned to the prestressed bridge design department, it had not been his inability to perform his work which had caused his unsatisfactory rating, but his personal habits and interpersonal relationships with other employees. The Commission noted that there were continual outbursts of bizarre behavior on Desikachar's part, and a continual hostility between him and other employees, and it seemed clear to the Commission that it was because he was mentally disturbed that he had not been able satisfactorily to perform his job. On the basis of medical testimony given at the hearing, however, the Commission found Desikachar had been rehabilitated by the treatment he had received and that he should, therefore, have an opportunity to show that he could properly perform his duties. The Commission ordered PennDOT, therefore, to reinstate Desikachar as a Civil Engineer II or III, but without back pay and in some area other than prestressed bridge design, for which he appeared to lack the requisite experience and understanding and where his former unsatisfactory relationships with the other employees might cause problems for all concerned if he were to return.

Timely appeals from the Commission's order were filed in this Court both by PennDOT and by Desikachar, PennDOT asking that the Commission's order be

vacated and that its dismissal of Desikachar be allowed to stand, while Desikachar asked that the order be modified so as to provide for back pay.

Our scope of review in this appeal has been defined by Judge KRAMER, speaking for this Court in *Corder v. Civil Service Commission*, 2 Pa. Commonwealth Ct. 462, 464-465, 279 A. 2d 368, 369 (1971):

". . . [T]he right of appeal by a party aggrieved, although limited by the Civil Service Act of August 5, 1941, as amended, 71 P.S. 741.951(c) has been expanded by §1710.47 of the Administrative Agency Law. The statute, inter alia, declares: 'Where an Act of Assembly expressly provides that there shall be no appeal from an adjudication of any agency, or that the adjudication of an agency shall be final or conclusive or shall not be subject to review . . . any person aggrieved by such an adjudication, may nevertheless appeal the same . . . to the [Commonwealth Court].'

"The scope of review to be employed by our Court derives from the Administrative Agency Law, supra, 71 P.S. 1710.44, which states: 'The Court to which the appeal is taken shall hear the appeal without a jury on the record certified by the agency. After hearing the court shall affirm the adjudication unless it shall find that the same is in violation of the constitutional rights of the appellant, or is not in accordance with law, . . . or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence.' The review then is not de novo but rather one which looks to error of law or abuse of discretion as the determinative criteria." *See also, Gibbs v. Civil Service Commission*, 3 Pa. Commonwealth Ct. 230, 281 A. 2d 170 (1971).

Upon a careful review of the record, we cannot find that the Commission abused its discretion by ordering PennDOT to reappoint Desikachar. There clearly was substantial evidence on which the Commission could

have found that Desikachar had been suffering from mental illness for a prolonged period of time. Penn-DOT's own witnesses testified to Desikachar's erratic behavior, and the medical witnesses testified as to the extent of Desikachar's illness. It was not an abuse of discretion for the Commission to have found that these mental problems contributed significantly to Desikachar's inability to perform his work satisfactorily. It was clear that they also contributed to Desikachar's problems in relating to other personnel, a major reason given for the dismissal.

PennDOT is clearly mistaken in its argument that the medical testimony does not support the finding that Desikachar is in condition to resume his employment. Both Drs. Muhlfelder and Cohen, who had treated Desikachar, testified that he had shown great improvement and was able to return to work. Dr. Cohen's remarks to the effect that Desikachar's ability to readjust successfully would require cooperation from his fellow employees do not contradict his specific statement that Desikachar has recovered from his illness. Dr. Cohen was merely pointing out the obvious fact that few individuals, especially those recently recovered from mental illness, can function properly when it is necessary to work with hostile fellow employees.

Inasmuch as there is no basis for finding that the Commission has abused its discretion, therefore, its order that Desikachar be reinstated must be upheld.

Even if the reinstatement order is to be held valid, however, PennDOT raises a further question as to whether or not the Commission may order Desikachar placed in a position different from the one from which he was removed. The Civil Service Act, Act of August 5, 1941, P. L. 752, Art. IX. 1, §951, as amended, 71 P.S. §741.951(a) provides: ". . . If such final decision is in favor of the employe, the appointing authority shall *reinstate* him with the payment of so much of the salary

or wages lost by him as the commission may in its discretion order." (Emphasis supplied.) "Reinstate" has been defined as ". . . return to a former status. . . .", *Gorski v. School District of the Borough of Dickson City,* 178 Pa. Superior Ct. 158, 168, 113 A. 2d 334, 339 (1955), and PennDOT notes that Desikachar's last employment was in prestressed bridge design. We believe, however, that to interpret "reinstate" to mean that the Commission may only restore an employee to exactly the same position he had before dismissal would be in error. If an agency, for example, had assigned an employee to duties it knew he was incapable of performing properly, intending that he would then be dismissed for just cause, it would clearly be inequitable to hold that the Commission could restore him only to that position. And, in this case, the Commission, having noted that Desikachar had been appointed to a position in the prestressed bridge design division despite the fact he had no training or experience in the area, undoubtedly believed that to return Desikachar to prestressed bridge design, where he is incapable of performing his work, would in effect again bring about a situation as unsatisfactory to PennDOT as it would be to him. Desikachar had previously shown himself capable of performing work in other sections of PennDOT, and the Commission order that he be returned to such work in some other section is reasonable and valid, especially in the absence of any showing from PennDOT that no such work was available.

Desikachar on his part has challenged that portion of the Commission's order which denies him back pay. As stated in Section 951 of the Civil Service Act, 71 P.S. §741.951(a), which is quoted above, the Commission *may* order back pay at its discretion. It is under no requirement to do so; and here it did not choose to do so. We can find nothing in the record or in Desika-

char's argument which would support a finding that the Commission had abused its discretion in this regard.

Because of the reasons stated above, therefore, we issue the following

### ORDER

Now, May 1, 1972, the order of the State Civil Service Commission restoring Satyagalam K. Desikachar to a position of Civil Engineer II or III with the Pennsylvania Department of Transportation, without back pay, is affirmed.

----

CONCURRING AND DISSENTING OPINION BY JUDGE ROGERS:

I agree with the majority that Mr. Desikachar was properly ordered to be reinstated. Mr. Desikachar was originally removed on account of aberrant behavior, obviously related to mental or emotional upset. At the hearing which resulted in the order here appealed from the testimony of the medical experts was that he was restored to health. The Commission properly ordered his reinstatement.

I cannot agree, however, that the Civil Service Commission has the power to compel PennDOT or any other agency of State government to refrain from assigning particular duties to a reinstated employee or to tell it in what location such employee should perform his duties. The Civil Service Act, Act of August 5, 1941, P. L. 752, Section 951, 71 P.S. 741.951, provides only that if the Commission shall decide in favor of an employee ". . . the appointing authority shall reinstate him. . . ." Recent reports strongly suggest that the business of State government is not conducted with perfect efficiency. Not only is the Commission's order instructing PennDOT how to employ Mr. Desikachar's services lacking in legal authority, it creates further confusion of authority in an already imperfectly organized enterprise.