Mettee *v.* Civil Service Commission.

Argued June 7, 1972, before Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT. President Judge BOWMAN did not participate.

*Richard B. Sigmond,* with him *Leonard Spear* and *Meranze, Katz, Spear & Bielitsky,* for appellant.

*Martin R. Cohen,* Assistant Attorney General, with him *Lawrence T. Hoyle, Jr.,* Deputy Attorney General, and *J. Shane Creamer,* Attorney General, for appellee.

OPINION BY JUDGE WILKINSON, July 18, 1972:

This is an appeal from an Order of the State Civil Service Commission sustaining the dismissal of appellant from his position of Parole Agent II, regular status, following a 30-day suspension. There is relatively little difference of opinion between counsel for the parties with regard to the legal principles which apply. The issue resolves itself quickly into whether the Commission had substantial evidence to support its Order approving the action of the Board of Probation and Parole in suspending the appellant for 30 days and in dismissing him. We hold that the record does support the Order of the Commission.

Appellant worked as a parole agent for some 16 months and appears to have had a satisfactory work record other than as the facts developed in this case.

At the time of his employment interview, it was explained that the position of parole agent required him to be available 24 hours a day and that if he attempted to continue his education, it could not interfere with his duties. This becomes important, for it later developed that appellant entered night law school at Temple University and took courses in the day law school that required his attendance in class on Tuesday from 12:00 to 12:45, and Thursday from 10:00 to 10:45. Not only did he not reveal this to his superiors so that they would know that he was not available during the time that he was attending classes at night and was not on duty on Thursday from 10:00 to 10:45, but, in fact, he attempted to base a refusal to attend an instructional conference set up by the Board of Probation and Parole on the grounds that it would interfere with his compulsory attendance in law school!

On November 1, 1971, the District Supervisor of appellant's office issued a directive that appellant, along with others, should attend a 5-day Group Inter-

action Training Session in Harrisburg, starting on November 8, 1971. Appellant declined to attend and, after an interview and as requested, submitted a memorandum of his reasons which is here quoted in full:

"Pursuant to our discussion this morning during which you declined to consider changing the scheduled date of my attendance at the training session and requested in writing my views on the matter, the following is herewith submitted:

"This agent is an evening student at Temple University Law School and wishes to note that rigid attendance at this institution as well as family commitment preclude attendance at the session scheduled for the week commencing November 8, 1971.

"This agent objects specifically to a protocol which excludes consultation with agents prior to the initiation of such sessions. In addition, the validity of intergroup therapy (sensitivity training) has never been advanced by any competent authority. A sensitivity training session appears extraneous to the job and an unreasonable burden is placed on those agents who must travel hundreds of miles and who reportedly are accorded minimal accommodations during their five-day visit. A particularly unreasonable burden is placed on married agents with families who have more important responsibilities than those incident to employment. (Signed Thomas J. Mettee, Parole Agent)"

This memorandum, it seems to this Court, is basis enough for the suspension and, especially when supplemented by appellant's return to the District Office in direct violation of the letter of suspension, supports the Commission's Order.

No good purpose would be served by here reviewing the other evidence which buttresses the Commission's Order. We will mention the two points most emphasized by appellant in the brief and in the oral argument.

Appellant attempts to excuse his violation of the instructions not to return to the District Office in two ways: First, he says he was only told not to return, not that he would be discharged if he did. Second, he asserts that he returned to deliver some "State property" and merely talked with the other agents as an incident to that primary purpose. We could not characterize the Commission's disregarding or not accepting these reasons as being arbitrary or capricious.

The other point advanced by appellant is that he was active in union affairs and that this was the actual reason for his suspension and dismissal. Appellant's testimony that he was told that the Board viewed this involvement negatively was contradicted by two witnesses. It was entirely the prerogative of the Commission to determine the credibility of witnesses and the value of their testimony. We certainly agree that the State Civil Service Commission must be alert that employees should not be suspended or discharged under the guise of false or insignificant charges when, in fact, the cause is displeasure of superiors with the employees' proper union activity. At the same time, the Commission must be alert to the employee who is active in union affairs and attempts to use such activity as a shield behind which to hide his willful dereliction of duty.

Failure to follow explicit instructions, as admitted by the appellant in this case, in addition to withholding information with regard to being a law student at the night law school of Temple University, including classes at the day school, all come within the criteria discussed in *Corder v. Civil Service Commission*, 2 Pa. Commonwealth Ct. 462, 279 A. 2d 368 (1971), and *Clodi v. Kremens and Wohlgemuth*, 4 Pa. Commonwealth Ct. 350 (1972). Indeed, appellant quoted the appropriate controlling language from *Corder* in his

brief: "We are able to discern that the legislative intent relating to one's relationship with the classified service turns upon a merit concept. This means that any 'personnel action' carried out by the Commonwealth is to be scrutinized in the light of such merit criteria, as has the party failed to properly execute his duties, or has he done an act which hampers or frustrates the execution of same. The criteria must be job-related and in some rational and logical manner touch upon competency and ability." 2 Pa. Commonwealth Ct. at 467, 279 A. 2d at 371.

Accordingly, we enter the following

### ORDER

Now, July 18, 1972, the Order of the State Civil Service Commission, dated March 3, 1972, dismissing the appeal of Thomas J. Mettee, and sustaining the action of the Board of Probation and Parole in the suspension and removal of Thomas J. Mettee as Parole Agent II, regular status, effective at the close of business December 29, 1971, is hereby affirmed.