## Williams *v.* Civil Service Commission.

438

Argued December 8, 1972, before Judges CRUMLISH, JR., MENCER and BLATT, sitting as a panel of three. Reargued April 2, 1973, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Steven E. Abraham,* with him *R. Merle Heffner* and *Jack E. Feinberg,* for appellant.

*Sidney V. Blecker,* Assistant Attorney General, with him *Marx S. Leopold,* Assistant Attorney General, for appellee.

OPINION BY JUDGE BLATT, June 29, 1973:

Alfred B. Williams (Williams) was employed by the Department of Public Welfare (Department) as a Youth Development Counselor I, regular status, at Youth Forestry Camp No. 3 in Huntingdon County. In the early morning hours of September 20, 1971, he discovered three students outside the dormitory building, apparently attempting to escape. He took them to his office, where they were joined by a fourth, who admitted that he had also planned to join in the escape attempt. Williams talked with the boys for about two hours, then sent them back to bed. He said he thought that, if he could get even one of them to sleep, it would end the entire plan to escape. Three of the boys returned to their own beds in one of the rooms, but the fourth, who was normally housed in another wing, also went to a vacant bed in the same room with the others. There is a dispute between the students and Williams as to whether or not he accompanied them to the room, but, even if he did, he apparently failed to note that none of the boys removed his clothes before lying down on his bed. Williams says that he looked in on the boys once after they had presumably gone to bed, but, the boys soon after that absconded, stealing a camp vehicle and riding away in it. They were subsequently captured and returned to the camp. Williams admittedly took no special precautions to prevent the second attempted escape.

The Director of the Camp requested an investigation of the incident by the State Police, interviewed the four students concerned and also gave Williams an opportunity to present his version of the incident. Subsequently, in a letter dated October 26, 1971, the Camp Director dismissed Williams from his position. This letter stated the reasons for dismissal as follows: "You in the early morning of September 20, 1971 were grossly negligent in your handling of a situation in which four students absconded from Dormitory B, Youth Forestry Camp #3, in a stolen state vehicle. Having prior knowledge of their planned runaway, you did not take the appropriate and necessary action in terms of preventive measures. Illustrative of this is that you permitted all four students to sleep in the same dormitory wing fully clothed even though you were aware that one student was assigned to the opposite wing of the building. You also used extremely poor judgment in the manner in which you counseled them concerning the situation. As a result of this negligence, these students broke into the administration building and then stole a state owned vehicle, endangering both themselves and the public in general."

Williams filed a timely appeal with the Pennsylvania Civil Service Commission (Commission), which, following a hearing, handed down an adjudication sustaining the dismissal. The Commission made the following pertinent findings of fact:

"7.  Appellant was aware that four students had plans to abscond.

"8.  The four students had a history of absconding.

"9.  Appellant found three of the students outside the dormitory; they returned to the office with him and were joined by a fourth student who stated he also planned to abscond.

"10. After talking with the students, appellant failed to take any further precautions to prevent an abscondence including making certain the students removed their clothes on returning to bed.

"11. Appellant failed to observe that one of the four students did not return to his own bed in another wing, but took a vacant bed in the room with the other three students." The Commission also noted that Williams was aware of a number of measures which had been recommended to the staff to prevent escapes, although these were not set forth in any written regulations. Among such measures were: calling a group meeting, taking the boys' clothes and shoes, sitting where the counselor could observe the dormitory, or having a student "junior counselor" sit there to observe. The Commission pointed out that Williams not only failed to take any of these measures to prevent the second escape attempt, but that he also testified to having told one of the students involved that, if they ran, he could do nothing about it.

"On appeal to this Court, an adjudication of the State Civil Service Commission shall be affirmed unless it appears that such was not in accordance with law, that any finding of fact necessary to support such adjudication is not supported by the evidence or that the constitutional rights of the appellant have been violated. Department of Transportation v. State Civil Service Commission, 5 Pa. Commonwealth Ct. 263, 290 A. 2d 434 (1972). It is the duty of the State Civil Service Commission to determine the credibility of witnesses, appearing before the Commission and to determine the value of their testimony. Mettee v. Civil Service Commission, 6 Pa. Commonwealth Ct. 82, 293 A. 2d 147 (1972). This Court will not weigh, but only examine, the evidence and will not substitute its judgment for that of the Commission. Gibbs v. State Civil Service

Commission, 3 Pa. Commonwealth Ct. 230, 281, A. 2d 170 (1971)." *Ricker v. Civil Service Commission,* 7 Pa. Commonwealth Ct. 329, 332, 300 A. 2d 293, 295 (1973). *See Corder v. Civil Service Commission,* 2 Pa. Commonwealth Ct. 462, 279 A. 2d 368 (1971).

Guided by these well established principles, we must hold, of course, that Williams could be removed from his position as a regular employee only for "just cause."[1] And, as we have previously stated: "We are able to discern that the legislative intent relating to one's relationship with the classified service turns upon a merit concept. This means that any 'personnel action' carried out by the Commonwealth is to be scrutinzed in the light of such merit criteria, as has the party failed to properly execute his duties, or has he done an act which hampers or frustrates the execution of same. The criteria must be job-related and in some rational and logical manner touch upon competency and ability." *Corder, supra,* 2 Pa. Commonwealth Ct. at 467, 279 A. 2d at 371.

If Williams was in fact guilty of gross negligence in the performance of his duties as charged, therefore, it is clear that this would be "just cause" for his removal. The question is whether or not the Commission had before it competent evidence to prove this employee's gross negligence. We believe that it did.

We believe "gross negligence" on the part of such an employee would consist of a failure to perform a duty in reckless disregard of the consequences or with such want of care and regard for the consequences as to justify a presumption of willfulness or wantonness. Reasonably exercising his judgment as to whether or not a given action should or should not be taken would

---

[1] Civil Service Act, Act of August 5, 1941, P. L. 752, §807, as amended, 71 P.S. §741.807.

not in itself constitute gross negligence, of course, but here Williams was guilty of much more than a mere error in judgment. His actions or failures to act, under the given circumstances of this case, were clearly such that the Commission was justified in viewing his conduct as grossly negligent. We must hold, therefore, that there were sufficient grounds for dismissal.

It must be remembered that Williams was a veteran of eight years service as a counselor. His own testimony makes it clear that he knew that the students might not yet have given up their plans to escape when he sent them to bed. However, he did not supervise their returning to bed, he permitted one of the students to sleep in the room with the other three even though that boy did not belong there, he took no note that all of the students lay down on their beds fully clothed, and he failed to keep watch to insure that they did not make another escape attempt. In addition, Williams took none of the preventative measures which had been discussed at various staff meetings in his presence. While he freely indicated his awareness that the boys might again seek to abscond, he still, as the Commission stated, "in effect washed his hands of the matter." And, as the Commission continued: "This is not exercising a judgment. It is negligence in not even following through on what appellant stated to be his own plan of action or else it indicates such a lack of concern as to whether the students 'ran' or not as to in fact have encouraged them to do so." We agree.

We find no merit, either, in Williams' further claim that he was deprived of due process. He bases this claim on the fact that the Regional Director of the Department did not conduct an independent review of the matter but merely accepted the dismissal recommendation of the Camp Director. There is, however, no legal requirement for such an independent investigation. On

the contrary, all requirements of the Civil Service Act and of the Rules thereunder seem to have been followed in this case. A more than adequate investigation was made of the incident, proper notice was given to Williams of the charges against him, he was given full opportunity to appeal to the Commission, and he took advantage of this opportunity. Nor was it a violation of due process to dismiss Williams without granting him a Department hearing as he also claims, for he did have a clear right to a subsequent hearing before the Commission, which he exercised. *Cf. Grausam v. Murphey,* 448 F. 2d 197 (3d Cir. 1971).

For the above reasons, therefore, we issue the following

### ORDER

Now, June 29, 1973, the Order of the Civil Service Commission sustaining the action of the Department of Public Welfare dismissing Alfred B. Williams as a Youth Development Counselor I is hereby affirmed.

DISSENTING OPINION BY JUDGE KRAMER:

I respectfully dissent.

At a time when the so-called "modern approach to penology" dictates leniency towards prisoners, as a therapeutic measure necessary for rehabilitation, when new humanistic treatment of prisoners has become the accepted governmental standard, Williams' actions, as disclosed by the record of this case, should not be deemed to be "gross negligence."

The record discloses that there were no written rules, regulations, standards, or procedures published or given to Williams, or any other such counselors, related to what was to be done or followed under such circumstances as confronted Williams. The method of handling such escape situations was left to the judg-

ment and discretion of the counselors. It is interesting to note that the Commission recognized this fact when it stated in its adjudication: ". . . it was his [Williams] judgment that they [the boys] would return to bed and forget the situation. . . ." A forestry camp, such as is involved in this case, is not a penitentiary, and its inmates are not supposed to be treated like hardened criminals. As I read the record, the Appointing Authority did not provide cells in which the boys could have been jailed. Under the facts of this case, the most Williams should be faulted with is bad judgment.

If I am permitted to take judicial notice of recent official governmental trends in this Commonwealth in the field of penology, then I take note of recently much-publicized penological trends when boys in forestry camps, such as are involved in this case, are taken by State officials across state lines to a night club, when narcotic and murder convicts are sent to college at state expense and without supervision (from which status they escape), when prisoners are permitted to leave prison to attend weight-lifting contests and then to a tavern (from which one escapes), etc., it is beyond my comprehension, taking such trends into account, how Williams can be found guilty of "gross negligence" and dismissed from his position, which he has held for eight years. Williams may not have used sound judgment, warranting disciplinary action or suspension measures, but in no way can I view this record as supporting the charge of "gross negligence." The Appointing Authority's dismissal and the Civil Service Commission's affirmation of such dismissal is an abuse of discretion.

One of the findings (No. 8) quoted in the majority opinion of the Commission is that the boys here in question had a history of "absconding." Accepting that as true, if there was any negligence in this case, it falls on

those state officials who sent these boys to a minimum security youth forestry camp in the first instance. Furthermore, the record discloses that the percentage of absconding at the camp where Williams was employed was decreasing. The Commission and the majority conclude that Williams' failure to require these boys to undress and to don pajamas should be characterized as "gross negligence." If these boys were prone to "abscond" after the incident described in the record, it is unreasonable to believe that they would not have redressed in their street clothes and absconded in any event.

From my point of view, I must strenuously dissent, because I sincerely believe the result of this case to be a travesty of justice.

Judge CRUMLISH, JR. joins in this Dissenting Opinion.

DISSENTING OPINION BY JUDGE MENCER:

Hindsight tends to sharpen one's view of circumstances and produces a keener insight with which to judge events. The human tendency to apply hindsight to a situation that had an unfortunate ending led to this appeal.

Alfred B. Williams was a Youth Development Counselor I, regular status, at Youth Forestry Camp No. 3, located in Huntingdon County. This camp is in a rural setting with no confining fence or barrier. To leave the camp area one merely has to walk away. This physical setting, which is the antithesis of a maximum security institution, is deliberately so designed to contribute to an atmosphere, for rehabilitation of the youthful offender, which will redirect the students by reasonable persuasion, trust, and the development of a relationship of confidence resulting from daily and close personal contacts between counselors and students.

Appellant reported for work at 11:45 p.m. on September 19, 1971 and soon thereafter, during the early morning hours of September 20, 1971, *he discovered* three students outside the building to which they had been assigned. Ascertaining that they were contemplating an escape, he took them to the main office where they were subsequently joined by a fourth student who admitted that he had planned to leave with the other three. Appellant then spent *more than two hours* talking to the boys and only after becoming convinced that they had abandoned, at least for the present, their plans to leave the camp, did he accompany the boys to their room. One of the boys was normally housed in another wing of the same building and the record discloses a dispute as to whether appellant was aware of this fact. In any event, appellant left the boys and returned to the office and thereafter he again checked on the boys and discovered that they had left their room and the camp.

Subsequently, appellant received a letter of dismissal under date of October 26, 1971, in which the reasons for dismissal were stated as follows: "You in the early morning of September 20, 1971, were grossly negligent in your handling of a situation in which four students absconded from Dormitory B, Youth Forestry Camp #3, in a stolen state vehicle. Having prior knowledge of their planned runaway, you did not take the appropriate and necessary action in terms of preventive measures. Illustrative of this is that you permitted all four students to sleep in the same dormitory wing fully clothed even though you were aware that one student was assigned to the opposite wing of the building. You also used extremely poor judgment in the manner in which you counseled them concerning the situation. As a result of this negligence, these students broke into the administration building and then stole a state owned

vehicle, endangering both themselves and the public in general."

Appellant appealed his dismissal to the State Civil Service Commission which, by order dated March 21, 1972, sustained appellant's dismissal by the Department of Public Welfare and dismissed his appeal. He then appealed here from the order of the State Civil Service Commission and contends that his dismissal was not based upon substantial evidence of "just cause."

The only findings of fact made by the Commission which are relevant to its adjudication and which could possibly support its conclusions of law that appellant was removed for just cause were those numbered 7 through 11. The first three of these crucial findings of fact are as follows:

"7. Appellant was aware that four students had plans to abscond.

"8. The four students had a history of absconding.

"9. Appellant found three of the students outside the dormitory; they returned to the office with him and were joined by a fourth student who stated he also planned to abscond."

I view these three findings to establish (1) that due to appellant's alertness and diligence he uncovered and thwarted the students' initial plan to abscond from the camp and (2) that he was thus aware of their plans in this regard. I do not comprehend how any of these findings support any determination of gross negligence on the part of appellant. They do establish the circumstances with which appellant was confronted and serve as a point of departure when one evaluates what next transpired.

Findings of fact numbered 10 and 11 read:

"10. After talking with the students, appellant failed to take any further precautions to prevent an

abscondence including making certain the students removed their clothes on returning to bed.

"11. Appellant failed to observe that one of the four students did not return to his own bed in another wing, but took a vacant bed in the room with the other three students."

The question remains as to whether these two findings support the Commission's conclusion that appellant was dismissed for just cause because he was grossly negligent. Appellant is held accountable for not removing the students' clothing and for not observing that one of the four students failed to return to his own bed. The assumption of the Commission must be that if one or both of these things would have happened the eventual escape would not have occurred. I cannot be as certain of this assumption since it seems as likely that the fourth student could have easily rejoined his friends even if he had been placed in his own bed, and it would not appear to have been difficult for the students to have redressed, even if they would have been required to remove their clothes on returning to bed.

Gross negligence is heedless and reckless disregard of others and includes elements of conscious indifference of consequences of one's actions. It means the omission of care which even the most inattentive and thoughtless seldom fail to take of their own concerns. Inadvertence is not gross negligence. Perhaps no specific rule can be laid down as to what constitutes gross negligence since each case depends on its particular facts or circumstances, but it may be said with certainty that gross negligence is substantially and appreciably higher in magnitude than ordinary negligence and that it is materially more want of care than inadvertence. I do not believe, under the facts of this case, that appellant, who spent more than two hours at-

tempting to defuse the escape, was chargeable with gross negligence.

I think it is highly important to keep in mind that there were admittedly no written regulations or established operating procedures to be followed relative to absconding students. The record shows that the personnel of this camp had discussed, at meetings attended by appellant, a number of measures which could be considered to prevent future escapes. These measures ranged from calling the director of the camp, holding a dormitory meeting, removing from students their shoes, to requesting a student designated as a junior counselor to assist the counselor. However, it was also clear from an examination of the record that it remained for each counselor to decide in accord with his experience and judgment what course of action to follow when confronted with a possible escape problem. Appellant, after two hours of discussion and with a background of eight years' experience, made a judgment decision to return the students to their rooms, to call another dormitory supervisor, and to make periodic visual checks on the students during the few hours that remained before daybreak. The subsequent escape made this judgment decision ineffective, and hindsight would understandably indicate that something more could have been done.

Appellant, unlike a jailer, being a counselor in an open institutional setting, should not be found grossly negligent for dealing with a situation in terms of trust and not force, in the absence of any directives other than the utilization of his experience and the exercise of his best judgment and discretion. One might query whether appellant's superiors, faced with a history of past escapes, were not themselves grossly negligent for not having erected a confining fence or barrier to better frustrate future attempts to escape. The answer to

such a query might well be in the negative, since the main purpose for a youth forestry camp is to rehabilitate and develop good character in youthful offenders, rather than to confine them in a given area. The building of a fence or removing clothing are measures separated only by degree when one views from a position of hindsight what should have been done to hinder absconding students. I do not see appellant's action as an example of perfection, but likewise I do not view it as constituting gross negligence and supporting a legal conclusion that he was dismissed in accordance with the legal test of just cause.

The Commission did not have before it substantial evidence that appellant had failed to properly execute his duties or was grossly negligent in his handling of a situation which preceded the escape of four students from Youth Forestry Camp No. 3 and therefore could not uphold appellant's dismissal from his position as a Youth Development Counselor I. Since the findings of fact made by the Commission do not support its conclusions of law and adjudication, I must dissent.