Emma Wilson, Appellant, *v.* City of Philadelphia Board of License & Inspection Review, Appellee.

Argued October 10, 1974, before Judges MENCER, ROGERS and BLATT, sitting as a panel of three.

*Sharon K. Wallis,* for appellant.

*Nicholas Panarella, Jr.,* Assistant City Solicitor, with him *James M. Penny, Jr.,* Assistant City Solicitor, *John Mattioni,* Deputy City Solicitor, and *Martin Weinberg,* City Solicitor, for appellee.

OPINION BY JUDGE BLATT, December 30, 1974:

This is an appeal from the Court of Common Pleas of Philadelphia County affirming a decision of the Philadelphia Board of License and Inspection Review (Board) which had upheld the lifting of a certification that the premises leased by Ms. Emma Wilson, appellant, were "Unfit For Human Habitation."

The subject premises were certified unfit for human habitation on October 14, 1971 following an inspection conducted by the Department of Licenses and Inspections (Department). Thereafter the appellant began paying her rent into an escrow account in accordance with the Rent Withholding Act.[1] This Act provides that when a dwelling is certified as unfit for human habitation the rent shall be held in escrow and shall be payable to the landlord when the dwelling is certified as fit for human habitation at any time within six months from the date

---

1. Act of January 24, 1966, P.L. (1965) 1534, *as amended,* 35 P.S. §1700-1 (Supp. 1974-1975).

of the unfit certification. If, at the end of six months, the dwelling has not been repaired and certified as fit for human habitation the money held in escrow shall be payable to the depositor.[2]

On March 27, 1972, which was within the six-month time period provided in the Act, the Department reinspected the subject property and removed the unfit certification. Ms. Wilson then appealed the removal of the unfit certification to the Board which held a hearing and rendered an adjudication affirming the Department's action. Upon her subsequent appeal to the Court of Common Pleas of Philadelphia County pursuant to Section 7 of the Local Agency Law, Act of December 2, 1968, P. L. 1133, 53 P. S. §11307, that court affirmed the Board's adjudication and an appeal to this Court followed.

Where the court below took no additional evidence, as was the case here, we must affirm the adjudication of the local agency unless we find that constitutional rights have been violated, errors of law have been committed, or findings of fact necessary to support the adjudication are not supported by substantial evidence. Section 8 of the Local Agency Law, 53 P. S. §11308 (b). *Elko v. Civil Service Commission*, 16 Pa. Commonwealth Ct. 102, 329 A. 2d 320 (1974). The credibility and weight to be accorded the evidence is, of course, a determination solely within the discretion of the local agency. *Mettee v. Civil Service Commission*, 6 Pa. Commonwealth Ct. 82, 293 A. 2d 147 (1972). In this case, the Rent Withholding Act confers authority upon the Department to establish standards so that the terms "unfit for human habitation"

---

2. "[E]xcept that any funds deposited in escrow may be used, for the purpose of making such dwelling fit for human habitation and for the payment of utility services for which the landlord is obligated but which he refuses or is unable to pay." The Rent Withholding Act, 35 P.S. §1700-1 (Supp. 1974-1975).

and "fit for human habitation" may be applied uniformly within the Department's jurisdiction. *Depaul v. Kauffman,* 441 Pa. 386, 272 A. 2d 500 (1971). In Philadelphia the Department has established a rating system whereby each housing code violation is assigned a fixed number of points. If the points accumulated against a given property exceed a designated total, the property is certified as unfit for human habitation. In a court approved stipulation, it has also been established in Philadelphia that the Department shall remove the designation of unfit for human habitation from any property where substantial compliance with the Philadelphia Code has been achieved. "Substantial Compliance shall be defined as such compliance with the Philadelphia Code so that no more than 20 points remain under the Point System. . . . Provided, however, that no such designation of Unfit for Human Habitation' shall be removed if any of the remaining Code violations present a danger to life or limb and/or involve the following types of violations: (a) Electrical (b) Plumbing (c) Heating (d) Water (e) Sewer (f) Roof (g) Windows (h) Fire (i) Drainage (j) Operation of Cooking Facilities (k) Rodent and Insect Infestation (l) Landlord—Sanitation Violations." (Court of Common Pleas of Philadelphia County, August Term 1968, No. 1152, and September Term 1968, No. 1971, approved by the court November 17, 1970.) It was incumbent upon the Board in this case, therefore, to determine whether or not substantial compliance with the Code had been achieved.

As we review the record we find it replete with inadequacies. First, the Board failed to apply a uniform evidentiary standard during the hearing, admitting in one instance, a self-serving hearsay letter to show that the appellant interfered with the landlord in making the necessary repairs, and excluding, in another instance, photographs of conditions of the premises taken only five

days after the reinspection.[3] The law clearly establishes that "[l]ocal agencies shall not be bound by technical rules of evidence at agency hearings, and all relevant evidence of reasonable probative value may be received." Section 5 of the Local Agency Law, 53 P.S. §11305. This non-restrictive standard favoring the admission of evidence is to be applied uniformly within proceedings and among proceedings. In this case we feel that the photographs were reasonably related both in time and in substance to the issue before the Board which was one of substantial compliance. The adjudication itself lacked the proper form insomuch as it failed to list findings of fact to support the Board's opinion. On the contrary, the Board merely summarized the conflicting testimony without establishing the weight it accorded to the various positions that were presented. One such fact left unresolved by the Board concerned whether or not the appellant interfered with and prevented the landlord from making the repairs necessary to bring about substantial compliance with the Code. Such a determination is essential, for the landlord can hardly be bound by the six-month period as set forth in the Rent Withholding Act if the tenant refuses to allow the repairs to be made. Under present Philadelphia procedures, it would appear that such interference results in a removal of the unfit classification, thereby entitling the landlord to the withheld rent, because a tenant who interferes with the process of repairs is apparently deemed to have waived his rights under the statute. We cannot agree, however, that the statute intended such a result. The statute involved is a remedial one designed to restore unfit premises to a habitable condition. *DePaul v. Kauffman, supra.* More

---

3. One objection to the photographs, aside from the time elapsed since the reinspection, was the absence of the photographer for authentication. Two witnesses to the photographing itself were present for authentication. This was clearly sufficient. *Semet v. Andorra Nurseries, Inc.*, 421 Pa. 484, 219 A.2d 357 (1966).

properly, therefore, where a tenant interferes with a landlord attempting to make repairs, the running of the six-month period established by the act should merely toll for the duration of the interference rather than extinguish the tenant's rights and the landlords' obligation altogether. Finally, and most notably, the Board in rendering its adjudication failed to accord the proper weight to the admitted fact that violations totaling twenty-two on the point system still remained on this property when the unfit certification was removed.[4] The Board, therefore, failed to apply the standard, designated by the City of Philadelphia, to be used in determining whether or not substantial compliance has been achieved. The stipulation agreed upon by the city was designed to reassure property owners that their properties will not retain unfairly the designation of unfit for human habitation. And just as surely it must be applied to reassure tenants that unfit certifications will not be lifted unfairly from their properties without the necessary repairs having been made.

It follows, therefore, that we must reverse the court below and the Board, for it is clear that the subject property was still unfit for human habitation on March 27, 1972, the date of the Department's reinspection. A mere reversal, however, does not fully rectify the insufficiency of the proceedings before the Board below. The Board must yet determine whether or not the appellant interfered with the making of repairs, and, if such interference was present, its duration must be established so that the time periods designated in the Rent Withholding Act may be applied properly.

Accordingly, the decision of the Board and the court below is reversed and we remand to the Board for proceedings consistent with this opinion.

---

4. The only clear fiinding of fact made by the Board was "[a]t the time of the lifting of the unfit, violations totaled twenty-two (22) points. However, the violations were of a minor nature, but will have to be corrected."