John L. Miller, Katherine Miller Mercer and Elizabeth Miller *v.* Allegheny County Health Department and Juanita Hill. (2 Cases)

Argued October 31, 1977, before Judges WILKINSON, JR. and ROGERS, sitting as a panel of two.

*James W. Carroll, Jr.,* for Juanita Hill.

*Timothy W. Pawol,* Special Assistant County Solicitor, with him *Deborah Comay,* Special Assistant County Solicitor, and *Alexander J. Jaffurs,* County Solicitor, for Allegheny County Health Department.

*William H. Markus,* with him *Markus, Riethmuller & Smith,* for John L. Miller, et al.

OPINION BY JUDGE WILKINSON, JR., November 21, 1977:

This case arises under the provisions of the Act of January 24, 1966, (Act), P.L. (1965) 1534, *as amended,* 35 P.S. §1700-1. The issue is whether the lower court properly ordered that funds paid into escrow by the appellant-tenant should be paid over to the appellees (landlords). We affirm the lower court.

The appellees' property was inspected by the appellant Allegheny County Department of Health (Department) on April 9 and 10, 1975. Numerous violations were found, both in the appellant-tenant's apartment, and in the common areas of the building. These violations amounted to 95 points[1] under the system utilized in the Department's Policies and Procedures for Rent Withholding and Housing Code Enforcement. Under that system, a total of 20 or more points renders the structure unfit for human habitation and qualifies the tenant for rent withholding. The certification date for the determination that the appel-

---

[1] By admission of the appellant-Department, this total should have been 90 points.

lant-tenant's apartment was unfit was April 17, 1975, and it was on that date that the six month withholding period began to run.

The appellees' building was reinspected on October 31, 1975, to determine if it had been made fit for human habitation so as to entitle the landlord to the rent money that had been paid into escrow. Under the Department's Policies and Procedures a mere finding that the violations total less than 20 points will not necessarily entitle the landlord to the escrow money. Rather, there must also be a showing that all cited rent withholding violations have been substantially corrected, and there must not be any violations of major public health significance remaining. This latter standard, used to determine who is entitled to the escrow money, is clearly stricter than the standard employed to determine fitness for the initial certification. In the instant case, the appellees were held not to be entitled to the escrow money even though the point total for the October 31 inspection was only 14. The Department found that a violation of major public health significance remained, and, therefore, held the tenant could receive the escrow money.

The lower court held that the Department's regulations[2] clearly required that if the violations totaled less than 20 points the structure was fit for habitation, and, therefore, the landlord would be entitled to the escrow money. We do not agree with this reasoning. As noted earlier, the Department has clearly set a stricter standard for determining "fitness for human habitation" with respect to the return of escrow money than it has for determining "fitness for human habitation" for the purpose of qualifying a property for

---

[2] The Rules and Regulations of the Department do not refer to the point system. This system is found in the Department's Policies and Procedures manual. Thus, the lower court must have been referring to the manual, rather than to the regulations.

rent withholding initially. The lower court's reasoning disregarded this distinction.

The appellees argue that the two-part system established by the Department is invalid, in that it holds landlords to a higher standard than that contemplated by the legislature when it enacted the Act. We disagree. We hold that the procedure in question here is valid. It is reasonable to impose a stricter standard for the reinspection of a property that has initially been certified unfit for human habitation, since it is clear that the landlord in such a case has demonstrated a disregard for his duty to keep the property fit for human habitation. Indeed, if a stricter system is not used for the reinspection, a landlord could correct just enough violations to bring his point total under 20 and thereby obtain the escrow, but still leave major health violations uncorrected.

While we uphold the rent withholding system established by the Department, we find that in the present case it has been erroneously applied. The only violations remaining on October 31 with respect to the appellant-tenant's apartment were a damp ceiling and wall in the bathroom (ten points), and rotted window frames in the dining room (one point). Three other minor violations (totaling three points) were found outside of the apartment in the common area of the structure.[3] We find nothing in these conditions that could reasonably be construed to constitute a violation of "major public health significance" within the meaning of the Department's Policies and Procedures manual. While under the law as set forth in *DePaul v. Kauffman*, 441 Pa. 386, 272 A.2d 500 (1971), the Department has discretion in determining what con-

---

[3] The common area violations were as follows:
  (1) front door not weather tight (one point);
  (2) second floor hall window ropes broken (one point);
  (3) front cellar window not weather tight (one point).

stitutes a condition of "major public health signifi-
cance," we believe it has abused that discretion here.
We further believe that the appellees' reduction of
their total violations from 95 points to 14 points con-
stitutes substantial compliance, and note that on the
record in this case there was a good faith effort to
comply with the Department's procedures.

Accordingly, we will enter the following

### ORDER

Now, November 21, 1977, the decision of the Court
of Common Pleas of Allegheny County, No. S.A. 816
of 1976, dated August 4, 1976, is affirmed.