Flora Belle Coleman, Appellant *v.* Board of Licenses and Inspections Review, Appellee.

Argued June 6, 1984, to Judges ROGERS, CRAIG and BARBIERI, sitting as a panel of three.

*David Giles,* with him, *Geoffry Walsh,* for appellant.

No appearance for appellee.

Opinion by Judge Rogers, July 17, 1984:

This is an appeal by a tenant from an order of the Court of Common Pleas of Philadelphia County affirming a decision of the Philadelphia Board of License and Inspection Review (board) which sustained the removal of the administrative designation "Unfit for Human Habitation" from the premises located at 1903 Kimball Street, Philadelphia, Pennsylvania.

The appellant, Flora Belle Coleman, has been a tenant of the single family house at 1903 Kimball Street since 1970. The property was certified unfit for human habitation on June 4, 1981 following an inspection conducted by the Department of Licenses and Inspections of the City of Philadelphia (L & I), on which certification it was reported that the property was without hot water, a violation of the Philadelphia Housing Code. This violation was reported as L & I Account No. 161631. A subsequent inspection conducted by L & I on November 20, 1981 established that the property's hot water problem had been corrected and, as a consequence, L & I lifted the unfit designation.

Ms. Coleman challenges L & I's removal of the unfit designation on the ground that other outstanding violations against the property existed which, under L & I's standards and policies, precluded removal of the designation.

Unfit designations are issued by local agencies pursuant to the Pennsylvania Rent Withholding Act (Act), Act of January 24, 1966, P.L. (1965) 1534, *as amended*, 35 P.S. §1700-1, which requires the escrow of rents from dwellings that a local agency has declared unfit for human habitation. Implicit in the terms of this Act is that local agencies must establish their own standards for determining whether a dwelling is unfit and when it ceases to be unfit. The Act further provides that rents escrowed by a tenant for a period of six months shall be returned to the tenant if the unfit designation remains at the end of six months. One effect of L & I's removal of the unfit designation from the Kimball Street property was to disallow the appellant's recovery of those rents she paid into an escrow account prior to November 20, 1981.

At the hearing conducted on September 2, 1982, the board refused to admit evidence regarding any conditions of the property other than the lack of hot water (Account No. 161631) and the subsequent correction of that problem on the ground that such other evidence is irrelevant. The board reasoned that:

[J]acket 161631 containing the lack of hot water violation, was the jacket which prompted and precipitated the "unfit" designation and when that violation was complied, the "unfit" designation was lifted, without consulting any other open violation files on the property. The Board feels that by assigning separate jacket numbers to specific inspection and then rein-

specting those jackets until complete compliance is achieved concerning the violations in the specific jacket, is a reasonable and effective administrative method by which to achieve compliance with the City's code.

As noted, the trial court affirmed the board's decision that L & I properly lifted the unfit designation without considering the other violations outstanding against the Kimball Street property.

Ms. Coleman asserts that an evaluation of the property's overall condition is an integral part of L & I's standards for determining whether to remove an unfit designation and that the board's failure to permit evidence of a long series of outstanding violations discovered by L & I in inspections it conducted both before and after it removed the unfit designation constitutes a capricious disregard of competent evidence which would have established that removal of the designation was improper. She also contends that the board, in excluding this evidence, deprived her of her right to reasonable examination and cross-examination and to the production of relevant evidence as guaranteed by Section 554 of the Local Agency Law, 2 Pa. C. S. §554.

The appellant's brief describes what it contends are the two standards binding L & I which govern the lifting of unfit designations and which require an overall evaluation of the property. Although L & I filed an appearance in this case, it filed no brief and presented no oral argument to this Court.

The appellant's brief and the court's opinion describe a numerical point system used by L & I in which each violation receives a point value. L & I will declare a dwelling unfit when the points for the total violations in a dwelling exceed 50 and it will not lift the unfit designation unless the original violation

10

total has been reduced by 50% *and* the total number of violation points is less than 50. The minimum standards for originally declaring a unit unfit are less stringent than those for lifting the designation and we have upheld such a two-tier system in *Miller v. Allegheny County Health Department*, 32 Pa. Commonwealth Ct. 454, 379 A.2d 1351 (1977). The record establishes that L & I maintained accounts of numerous violations against this property, ranging from roof leaks to defective plumbing, and it is not disputed that some of these violations existed and remained uncorrected at the time the unfit designation was lifted, as well as at the time of the September 2, 1982 hearing before the board. The appellant contends that the additional violation reports, if considered by the board, could have established that the cumulative number of violation points exceeded 100 and that even if correction of the hot water defect reduced the point total by 50 points, the initial point total may not have been reduced by 50% by November 20, 1981 when the unfit designation was removed.

The appellant also alleges that L & I is bound by a court approved stipulation in another case that L & I will remove an unfit designation where "substantial compliance" with the Philadelphia Code has been achieved. Neither the board's decision nor the trial court's opinion makes mention of this stipulation, although the appellant's representative raised the stipulation's substantial compliance standard both in the appeal form to the board and at the hearing. Paragraph four of the stipulation defines the applicable standard as follows:

"Substantial Compliance" shall be defined as such compliance with the Philadelphia Code so that no more than "[50] points" remain under the Point System adopted by the Department of

Licenses and Inspections. Provided, however, that no such designation of "Unfit for Human Habitation" shall be removed if any of the remaining Code violations present a danger to life or limb and/or involve the following types of violations: (a) Electrical; (b) Plumbing; (c) Heating; (d) Water; (e) Sewer; (f) Roof; (g) Windows; (h) Fire; (i) Drainage; (j) Operation of Cooking Facilities; (k) Rodent and Insect Infestation; (l) Landlord—Sanitation Violations.

Court of Common Pleas of Philadelphia County, August Term 1968, No. 1152, and September Term 1968, No. 1971, approved by the court November 17, 1970.

The appellant maintains that some of the violations outstanding against this property on November 20, 1981 were precisely of the nature referred to in this stipulation and that, accordingly, the property could not have been in "substantial compliance" with the code at that time. The appellant further points to *Wilson v. Philadelphia Board of License and Inspection Review*, 16 Pa. Commonwealth Ct. 586, 329 A.2d 908 (1974) which appears to support its assertion that under L & I's point system and its substantial compliance stipulation, L & I and the board were obliged to perform a complete evaluation of the property rather than considering only the hot water defect and its subsequent correction.

The board's action of considering evidence only of the violation that precipitated the unfit designation, which was upheld by the trial court, may be contrary to the point system and substantial compliance standards described above. As noted, we are without benefit of a brief or argument from L & I and although the appellant included in the record an isolated portion of L & I's point system policy regarding declaration, we

have not been provided with L & I's complete policies, procedures, rules and regulations regarding such matters. We do not even know, for example, what point values are assigned to what types of violations. The absence of such materials makes review impossible. Our scope of review is governed by Section 754(b) of the Local Agency Law, 2 Pa. C. S. §754(b) which provides relevantly:

> After hearing the court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, *or that the provisions of Subchapter B of Chapter 5 (relating to practice and procedure of local agencies) have been violated in the proceedings before the agency,* or that any [necessary] finding of fact . . . is not supported by substantial evidence. (Emphasis added.)

As noted, Section 554 of the Local Agency Law, 2 Pa. C. S. §554 provides that "[l]ocal agencies shall not be bound by technical rules of evidence at agency hearings, and all relevant evidence of reasonably probative value may be received. Reasonable examination and cross-examination shall be permitted." We are unable to determine definitively the relevance of the proffered evidence because we have been provided with no evidence, other than the appellant's allegations of what L & I's established and mandatory procedures are, regarding when an unfit designation is to be removed from a particular premises. The point system and the substantial compliance stipulation, as we understand them, appear to warrant a conclusion that evidence of the property's overall condition was erroneously excluded; nevertheless, the board, with its expertise in this area, found exclusion appropriate and its action was sustained by the trial court.

We are constrained to conclude that we are unable to decide the case on the record before us and that the proper course of action is to reverse the trial court's order and remand the matter to the board for a new hearing at which L & I's rules, regulations, policies and procedures concerning the designation of dwellings as unfit for human habitation and the lifting of such designations shall be made a part of the record. The board should also hear such evidence concerning the condition of this property relevant to the proper decision of this case in light of L & I's standards and procedures.

## ORDER

AND Now, this 17th day of July, 1984, the order of the Court of Common Pleas of Philadelphia County is reversed and the record remanded to the Philadelphia Board of License and Inspection Review for further proceedings consistent with this opinion. Jurisdiction is relinquished.