KEYSTONE AERONAUTICS CORPO-
RATION, a corporation, Plaintiff,

v.

R. J. ENSTROM CORPORATION, a cor-
poration, Defendant and Third-Party
Plaintiff,

v.

FOUNDRY ALLIED INDUSTRIES, INC.,
a corporation, Third-Party Defendant.

Civ. A. No. 72-232.

United States District Court,
W. D. Pennsylvania.

Aug. 16, 1973.

John T. Tierney, III, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for plaintiff.

Kenneth S. Robb, Meyer, Darragh, Buckler, Bebenek & Eck, Randall J. Mc-Connell, Jr., Dickie, McCamey & Chilcote, Pittsburgh, Pa., for defendant

MEMORANDUM AND ORDER

McCUNE, District Judge.

This litigation arose out of the crash of a helicopter sold by the defendant to the plaintiff.

The matter is now before the court on defendant's motion for summary judgment. The central question presented is whether strict liability imposed by § 402A Restatement, (Second), Torts, may be waived in a commercial contract between two corporations for the sale of goods.

By a purchase agreement and Bill of Sale dated March 27, 1970, the plaintiff

Keystone Aeronautics Corporation ("Keystone") and the defendant R. J. Enstrom Corporation ("Enstrom") agreed to the terms of the sale of two helicopters, ("No. 46 and No. 34").[1]

The front page of the purchase agreement contained the following provision:

"Customer takes 'AS IS' without warranty of any kind except will convey good title."

On the back of the purchase agreement a standard warranty provision had been deleted and the following language inserted instead:

"The R. J. Enstrom Corporation will be held harmless of any liability in connection with sale.

"Sale of these helicopters is unconditional and no warranty of any kind is made or implied."

On September 23, 1970, helicopter No. 46 crash landed while being flown by a Keystone employed pilot. The pilot was uninjured but the aircraft was substantially damaged.

At the request of the Federal Aviation Agency, which investigated the crash, Keystone removed helicopters No. 24[2] and 34 from service until the cause of the crash could be determined and the helicopters inspected to detect similar faults and correct them. During the interim Keystone apparently leased other helicopters in order to carry out its contractual commitments with clients.

Keystone subsequently brought this suit seeking damages on the theories of negligence, breach of warranty[3] and strict liability under § 402A of the Restatement, (Second), Torts. Keystone seeks to recover the cost of parts and repair of No. 46, as well as damages for the amount of lost profits while it was not in use. Keystone also seeks to recover for lost profits and the costs of leasing replacements for the two grounded but undamaged helicopters.

Enstrom has moved for summary judgment arguing that under the terms of the contract Keystone is entitled to no damages as a matter of law. Both parties agree that there are no material facts in dispute and that on the present record a summary judgment motion is proper.

We think the disclaimer of liability in the March 27 purchase agreement insulates the defendant from liability and accordingly we will grant defendant's motion for summary judgment.

It does not require extended discussion to dispose of the plaintiff's negligence theory. Although the word "negligence" was not specifically used in the exculpatory clause of the contract, the contract comprehensively limited Enstrom's liability in any form. The helicopter was denominated as a "demonstrator" and sold "AS IS" (thereby eliminating any implied warranties). The only purpose of the "hold harmless of any liability" clause, therefore, would be to eliminate liability for negligence. Under Pennsylvania law a limitation of negligence liability in the circumstances of this case is enforceable. Shafer v. Reo Motors, 205 F.2d 685 (3rd Cir. 1953); Charles Lachman Co. v. Hercules Powder Co., 79 F.Supp. 206 (E.D.Pa. 1948); See also Fire Ass'n of Philadelphia v. Allis Chalmers Mfg. Co., 129 F. Supp. 335 (N.D.Iowa, 1955). Accordingly, the terms of the sales agreement effectively preclude Keystone from recovering damages for negligence.

Plaintiff next contends that the exculpatory clauses in the second purchase agreement only limit the defendant's contractual rights to maintain an action

---

1. The full designation of the helicopters is Enstrom No. 046, Registration No. 4894 and Enstrom No. 034, Registration No. N4884.

2. No. 24 had been sold by Enstrom to Keystone pursuant to the terms of a purchase agreement entered into on December 11, 1969. The limited warranty on No. 24 had expired before No. 46 crashed. The full designation of No. 24 is Enstrom No. 024, Registration No. N4873.

3. At oral argument on the summary judgment motion plaintiff abandoned the breach of warranty theory.

for breach of warranty. Comment "m" following § 402A, plaintiff's argument continues, clearly states that strict liability sounds in tort, not contract, therefore the warranty limitation does not protect the defendant and plaintiff can recover under a tort theory of strict liability.

■ Under Pennsylvania law a warranty exculpatory clause may be used to disclaim liability in both contract and tort. Shafer v. Reo Motors, *supra*. A *fortiori*, an "AS IS" clause coupled with a "hold harmless" clause may also be used to disclaim liability in both contract and tort. We need not decide, therefore, whether Pennsylvania courts would adopt Comment "m" because regardless of the classification of § 402A as warranty or tort the disclaimer is broad enough to protect the defendant. This position is buttressed by reading the contract which, taken as a whole, clearly evidences an understanding between the parties that no liability of any kind would run with the sale.

For purposes of waiver of liability between two corporations we perceive no difference between the tort theories of negligence and strict liability. We see no reason why if, under Pennsylvania law, parties to a contract in some circumstances may waive tort liability for negligence they should not be able to waive tort liability for strict liability as well.

The question remains, however, whether as a policy matter the courts should permit the waiver of liability imposed under § 402A.

Strict liability as embodied in § 402A was conceived and born as a "pure matter of public policy." [4] The purpose of the strict liability rule as the California Supreme Court said in *Greenman, supra*, is to protect consumers who are "powerless to protect themselves." 59 Cal.2d at 63, 27 Cal.Rptr. 697.[5] That policy hardly can be said to extend to the situation at bar where two corporations have negotiated the terms of a sale at arms length. Both corporations obviously are familiar with aeronautical equipment and they have negotiated at least two of these sales with each other.

■ While it can be fairly said that for reasons of social policy strict liability cannot be disclaimed in a "garden-variety" consumer sale we see no reason to extend that logic to a strictly commercial sale between two corporations which have negotiated both the terms and the price of the sale. It would be unwise to hold that § 402A applies to corporations in a commercial sale whether they like it or not. Freedom of contract demands that a corporate purchaser be permitted to make business judgments, e. g., accepting the protection of a full warranty at a higher price or negotiating a lower price and running the risk that the product may be defective.

Delta Air Lines, Inc., v. Douglas Aircraft Company, Inc., 238 Cal.App.2d 95, 47 Cal.Rptr. 518 (1965) is directly in point. There Delta Air Lines sued Douglas Aircraft to recover the cost of repairs to a DC–7 airplane which Delta had purchased from Douglas and which had been damaged in a crash. In deny-

4. Prosser, Torts, § 97, p. 681 (3d ed., 1964). Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897 (1963) ; Escola v. Coca Cola Bottling Co., 24 Cal.2d 453, 150 P.2d 436 (Traynor, J. concurring).

5. ". . . As handicrafts have been replaced by mass production with its great markets and transportation facilities, the close relationship between the producer and the consumer of a product has been altered. . . . The consumer no longer has means or skill enough to investigate for himself the soundness of a product, even when it is not contained in a sealed package, and his erstwhile vigilance has been lulled by the steady efforts of manufacturers to build up confidence by advertising and marketing devices such as trade-marks. . . ." Concurring opinion of Justice Traynor, Escola v. Coca Cola Bottling Co., *supra*. See also: Prosser, Torts, § 97, p. 673, 4 (3d ed., 1964) ; Restatement of Torts 2d, & 402A, Comment "c."

**1066**

ing recovery the court held that the broad exculpatory clause in the sales contract was adequate to prevent recovery under either negligence or strict liability. The court summarized its holding by saying that:

"In short, all that is herein involved is the question of which of two equal bargainers should bear the risk of economic loss if the product sold proved to be defective. Under the contract before us, Delta (or its insurance carrier if any) bears that risk in return for a purchase price acceptable to it; had the clause been removed, the risk would have fallen on Douglas (or its insurance carrier if any), but in return for an increased price deemed adequate by it to compensate for the risk assumed. We can see no reason why Delta, having determined, as a matter of business judgment, that the price fixed justified assuming the risk of loss, should now be allowed to shift the risk so assumed to Douglas, which had neither agreed to assume it nor been compensated for such assumption." (Footnote omitted). 238 Cal. App.2d, at 104–105, 47 Cal.Rptr. at 524.

We think that both the reasoning and the holding in that case is sound and applies with equal force here.

■■ Plaintiff cannot recover damages, therefore, under any of the three theories pled in the complaint.[6] Accordingly, defendant's motion for summary judgment shall be and hereby is granted.

It is so ordered.

---

6. There may be still another reason why Keystone may not recover here under either negligence or strict liability theories: assumption of risk.

It is well established that assumption of the risk is a good defense to strict liability as well as negligence. Elder v. Crawley Book Machinery Co., 441 F.2d 771 (3rd Cir.); Henrich v. Cutler Hammer Co., 460 F.2d 1325 (3rd Cir. 1972). By purchasing the helicopter "AS IS" Keystone assumed the risk of product defect. Keystone chose to buy from Enstrom with clear knowledge of all the risks involved when it had the reasonable alternative of buying from another manufacturer who did not disclaim the risks, or paying Enstrom a higher price to retain the risks. See Seely v. White Motor Company, 63 Cal.2d 9, 45 Cal.Rptr. 17, 30, 403 P.2d 145 (1965) (J. Peters concurring and dissenting). A plaintiff cannot be heard "to complain of a risk which he has encountered voluntarily, or brought upon himself with full knowledge and appreciation of the danger." Prosser, Torts (3d ed. 1964), § 78, p. 539.