## Darrow et al., Appellants, *v.* Keystone 5, 10, 25, $1.00 Stores, Inc.

Argued May 24, 1950. Before DREW, C. J., STERN, STEARNE, JONES and BELL, JJ.

124

*F. Brewster Wickersham*, with him *Huette F. Dowling* and *Metzger & Wickersham*, for appellants.

*Arthur Berman*, with him *Samuel Handler* and *Compton & Handler*, for appellee.

OPINION BY MR. JUSTICE JONES, June 26, 1950:

Ben A. Darrow and Alexander Darrow, son and father respectively, along with a third person, Dr. J. H. Moran, sued the defendant company in this one action on three separate causes, one belonging to each of the named plaintiffs, for their respective damages allegedly due to the defendant's negligence. Upon the defendant's motion for judgment *against the Darrows* on the pleadings, the court below entered such judgment which necessarily meant, in procedural reality, two separate judgments, one against each of the Darrows. However, they took but this one appeal, ostensibly as a joint appeal, which, of course, was not possible in the circumstances. At bar, their counsel moved to discontinue as to plaintiff Alexander Darrow with leave to proceed with the appeal as the separate appeal of Ben A. Darrow. We granted the motion and heard argument on the merits of the appeal, the amount in controversy still being within our jurisdiction.

The presently material facts, as averred by the complaint, are as follows. Alexander Darrow was the lessee of the second story portion of certain premises whereof the defendant was the landlord by mesne conveyance.

The defendant occupied the first floor and basement of the property. Ben A. Darrow was resident in the second floor apartment as the guest of his father, the tenant. Ben sued to recover damages for loss by fire to his personal property located in the premises demised to his father. The fire originated in the basement from the ignition of some paper cartons due to the heat generated by a burning two hundred watt electric light bulb against which the defendant had negligently piled the cartons. The defendant answered and, under new matter, set up, and attached as an exhibit, the written lease under which Alexander Darrow held the second story premises. The lease contained, inter alia, a provision that "The Lessee expressly agrees to assume all liability of accident or damage due to said occupancy." The defendant moved for judgment on the pleadings on the ground that it was not liable for any damage to property of the lessee or his guest, Ben A. Darrow, in the demised apartment.

The learned court below entered judgment for the defendant against the Darrows on the ground that the meaning of the above-quoted provision of the lease is that "the lessee expressly agrees to take upon himself the liability of the landlord for the latter's negligent action for the damages the tenant might sustain in consequence of his occupying the leased premises." With that conclusion, we do not agree. As is evident, the present problem is concerned with the interpretation of the lease provision respecting the lessee's assumption of liability in a certain contingency in relief of the landlord. It is unnecessary to suppose situations in which that provision might have become pertinent. We are confronted here with a question of liability for damages due to the defendant's own negligence; and, in no view, can the clause be thought sufficiently specific and clear to relieve the defendant from liability in such circumstances. What the lessee assumed was "all liability of accident or damage due *to said occupancy*" (Emphasis supplied). Mani-

festly, the fire did not occur because the lessee was in possession of the second floor of the building. The damage was not due "to said occupancy" unless it be suggested that the plaintiff and his father would not have suffered any loss from the fire had the father not been the lessee of the second floor apartment. Of course, the clause is not rightly susceptible of any such meaning. Nor does the use of the word "all" for the inclusion of the liability intended enlarge the scope of the liability "due to said occupancy."

No Pennsylvania case construing a like lease provision or anything materially similar to it has been cited us; nor have we found any. The cases relied upon by the learned court below are readily distinguishable. Those cases were concerned with provisions of one or the other of two types of release of liability, neither of which is presently germane. The one type relieved the lessor from liability for damages "however occurring" (see *Lerner v. Heicklen,* 89 Pa. Superior Ct. 234, 236) and, the other, from liability for damages arising from detailed special causes: see *Jacob Siegel Company v. Philadelphia Record Company,* 348 Pa. 245, 246, 35 A. 2d 408; *Cannon v. Bresch,* 307 Pa. 31, 34, 160 A. 595; also *Rundell & Company v. Lehigh Valley Railroad Company,* 254 Pa. 529, 531, 98 A. 1054.

Were there any doubt, which there is not, that the lease provision did not operate to impose upon the lessee liability for damages due to the defendant's own negligence, the question would still have to be answered adversely to the defendant's contention in keeping with the well-known rule of construction that, in cases of doubt or uncertainty as to the meaning of a provision of a lease, it is to be construed most strongly against the lessor and in favor of the lessee: *McClintock & Irvine Company v. Aetna Explosives Company,* 260 Pa. 191, 195, 103 A. 622. See, also, *Larsh v. Frank & Seder of Pittsburgh, Inc.,* 347 Pa. 387, 391, 32 A. 2d 219; *General*

*Realty Co. v. Gold,* 293 Pa. 260, 261, 142 A. 279; *White v. Long,* 289 Pa. 525, 531, 137 A. 673; and *Williams v. Notopolos,* 259 Pa. 469, 476, 103 A. 290.

Judgment reversed with a procedendo as to the claim of Ben A. Darrow.