385 A.2d 437

**Joseph ZIMMER, Appellant,**

v.

**MITCHELL AND NESS, Appellee,**

and

**Camelback Ski Corporation, Defendant,**

and

**G. P. I., Inc. and Head Ski Co., Div. of A. M. F. and Rieker Ski Equipment Corporation, Additional Defendants.**

Superior Court of Pennsylvania.

Argued June 15, 1977.

Decided April 13, 1978.

Charles Sovel, Philadelphia, for appellant.

Jonathan D. Herbst, Philadelphia, for appellee, Mitchell and Ness.

No appearance entered nor briefs submitted for appellees, Camelback, G. P. I., Inc., Head Ski Co., and Rieker Ski Equipment Corp.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

This is an appeal from the order of the court below granting appellee, Mitchell and Ness, summary judgment. Because the record discloses no genuine issue of material fact and because appellee was entitled to judgment as a matter of law, we affirm.

On January 6, 1973, appellant went to appellee's rental shop at the Camelback Ski area to rent skis, boots and poles. Appellant signed a rental agreement before accepting the ski equipment. Later, while descending the beginners'

slope, appellant fell. The bindings on appellant's skis did not release, thereby causing him to sustain numerous injuries. Appellant commenced this action on January 3, 1975 against appellee and Camelback Ski Corporation alleging negligence, violation of § 402A of the Restatement (Second) of Torts and breach of warranty. Appellee filed an answer and new matter alleging that appellant signed a rental agreement which fully released appellee from liability. In his reply, appellant admitted signing the agreement, but generally denied that it released appellee from liability. After the parties took depositions, appellee moved for summary judgment, which the lower court granted on October 29, 1976. For the reasons that follow, we affirm.

Rule 1035(b) of the Pennsylvania Rules of Civil Procedure provides:

"[summary] judgment . . . shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

No material facts are in issue. Appellant admits that he signed the rental agreement which provides:

"RENTAL AGREEMENT AND RECEIPT

I accept for use as is the equipment listed on this form and accept full responsibility for the care of the equipment while it is in my possession, and agree to reimburse Mitchell and Ness Ski Shop for any loss or damage other than reasonable wear resulting from use.

I understand that insurance coverage applies to equipment breakage only, not lost, misplaced or stolen equipment.

I understand that so-called safety bindings furnished herewith are releasable bindings designed to reduce the risk or degree of injuries from falling and that these bindings will not release under ALL circumstances and are no guarantee of my safety.

> I furthermore release Mitchell and Ness from any liability for damage and injury to myself or to any person or property resulting from the use of this equipment, accepting myself the full responsibility for any and all such damage or injury."

There being no material facts in issue, our next inquiry is whether appellee was entitled to judgment as a matter of law. The specific question is whether the agreement is valid and enforceable such that appellee is not legally liable for injuries suffered by appellant.

The test for determining the validity of exculpatory clauses, admittedly not favored in the law, is set out in *Employers Liability Assur. Corp. v. Greenville Business Men's Ass'n.*, 423 Pa. 288, 224 A.2d 620 (1966). The contract must not contravene any policy of the law. It must be a contract between individuals relating to their private affairs. Each party must be a free bargaining agent, not simply one drawn into an adhesion contract, with no recourse but to reject the entire transaction. In the instant case the validity of the agreement is apparent. However, to be enforceable, several additional standards must be met. First, we must construe the agreement strictly and against the party asserting it. Finally, the agreement must spell out the intent of the parties with the utmost particularity. *Employers Liability Assur. Corp. v. Greenville Business Men's Ass'n., supra.*

Appellant argues strongly that the title of the agreement, "RENTAL AGREEMENT AND RECEIPT," does not indicate that the contract contains a release from liability. Appellant insists that the contract therefore lacks the necessary clarity to render it enforceable. We are compelled to look at the agreement as a whole to determine whether the parties' intent is clearly set forth. Although the title does not signal the exculpatory nature of the agreement, the four paragraphs of the body clearly state in laymen's terms the fact that Mitchell and Ness is released from liability for damages and injury. The first sentence of the agreement begins, "I accept for use *as is* the equipment listed on this

form . . . (emphasis added)." In the third paragraph the endorser acknowledges the fact that the bindings, although designed to reduce the risk or degree of injuries, will not release at all times and are no guarantee of safety. In the final paragraph, appellant accepts "full responsibility for any and all . . . damage or injury" resulting from use of the equipment. No clearer expression of intent to exculpate appellee is conceivable.

■ Appellant's next argument is that because the word "negligence" does not appear in the rental agreement, the exculpatory language does not cover his claim against appellee. It might also be argued that the clause is general and does not specifically exculpate appellee from negligent conduct. Although we must construe the contract strictly, we must also use common sense in interpreting this agreement. The mere fact that the word "negligence" does not appear in the agreement is not fatal to appellee's position.

In *Bogutz v. Margolin*, 392 Pa. 151, 139 A.2d 649 (1958), a tenant sued her landlord for injuries received in a fall in the basement of the apartment building. Although the exculpatory clause did not specifically mention the basement, it did release the landlord from injury or damage occurring "in or about the premises." The supreme court construed the clause to cover the basement and affirmed judgment on the pleadings in the landlord's favor. In *Cannon v. Bresch*, 307 Pa. 31, 160 A. 595 (1932), a tenant sued his landlord for negligence which caused water damage to his stock and trade fixtures. The exculpatory clause released the landlord "from any and all liability for damage that may result from the bursting, stoppage, and leakage of any water pipe . ." The supreme court found it unnecessary to resort to any rules of construction. The clause specified "any and all liability," which was sufficient to include damage from negligence. Judgment on the pleadings for the landlord was affirmed.

Those cases contrast with *Galligan v. Arovitch*, 421 Pa. 301, 219 A.2d 463 (1966), in which an exculpatory clause specified locations in which the tenant might be injured but

the landlord was not to be held liable. The clause did not specify the front of the building, where the tenant fell. Because there was no general language which could be construed to include the area in front of the building, as in *Bogutz v. Margolin, supra,* judgment on the pleadings in favor of the landlord was reversed.

In the instant case, the main exculpatory clause is the fourth paragraph of the agreement, releasing appellee "from any liability for damage and injury to myself or to any person or property resulting from the use of this equipment . . ." To say that negligent conduct is not included in "*any* liability" is patently incorrect. The dissent suggests a further tortured reading of the clause, and would hold that the alleged liability in this case did not accrue from "use of the equipment," but from appellee's failure to inspect and fit the bindings for appellant. It is clear that the accident occurred while appellant was using the equipment and that appellant's injury was at least compounded by the equipment's failure to function as it should have.

One further argument might be that the agreement cannot be construed to cover appellee's negligence because it occurred prior to the signing of the agreement. If appellee was negligent as alleged, in renting equipment to appellant without first testing and fitting the bindings for appellant, then that negligence occurred simultaneously with appellant's acceptance of the rental agreement and receipt. For the reasons stated, we find the exculpatory clause valid and enforceable.

Judgment affirmed.

HOFFMAN, J., files a dissenting opinion in which SPAETH, J., joins.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

HOFFMAN, Judge, dissenting:

Appellant asserts that the lower court erred in granting appellee's motion for summary judgment. I agree and

would, therefore, reverse and remand for further proceedings.

On January 6, 1973, appellant entered appellee's rental business, a concession located at the Camelback Ski area. Appellant, who had never skied, rented skis, boots, and poles from appellee and proceeded to the beginner's slope. During his descent, appellant fell. His bindings failed to release and he sustained several injuries including a spiral fracture of the left distal tibia.

On February 24, 1975,[1] appellant filed a complaint in trespass and assumpsit against appellee and the Camelback Ski Corporation. Appellant set forth the above facts and alleged: "The injuries and losses suffered by the plaintiff, as more fully hereinafter described, were caused solely by reason of the negligence and recklessness of the defendants herein, and were due in no manner whatsoever to any act or failure to act on the part of the plaintiff. The defendant, Mitchell & Ness, by its agents, workmen and employees, negligently rented to the plaintiff, skis, boots and bindings which were not appropriate nor of safe design, fit, assembly, and adjustment, as a consequence of which the bindings did not release when he suffered the aforementioned fall."[2] On May 12, 1975, appellee filed an answer and new matter alleging that prior to using the ski equipment appellant signed a rental agreement which fully and completely released appellee.[3] In appellant's reply to new matter, he

1. Appellant filed a summons in trespass on January 3, 1975, thereby tolling the statute of limitations.

2. Appellant also pleaded causes of action under § 402A of the Restatement (Second) of Torts and for breach of warranty.

3. The contract provided as follows:
  "RENTAL AGREEMENT AND RECEIPT
  "I accept for use as is the equipment listed on this form and accept full responsibility for the care of the equipment while it is in my possession, and agree to reimburse Mitchell and Ness Ski Shop for any loss or damage other than reasonable wear resulting from use.
  "I understand that insurance coverage applies to equipment breakage only, not lost, misplaced or stolen equipment.
  "I understand that so-called safety bindings furnished herewith are releasable bindings designed to reduce the risk or degree of injuries

admitted signing a rental agreement and receipt but denied that it released appellee from liability.[4] After the parties took interrogatories,[5] appellee moved for summary judgment on August 2, 1976. The lower court granted the motion on October 29, 1976, and held that, as a matter of law, the clause exculpated appellee. This appeal followed.

Appellant argues that the rental agreement clause did not operate to exculpate appellee, and therefore, the grant of summary judgment was improper. Pennsylvania Rule of Civil Procedure 1035(b) provides that summary judgment is to be rendered only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The burden of demonstrating that no genuine issue of material fact exists and that one is entitled to a judgment as a matter of law, is on the moving party, and the record must be examined in the light most favorable to the non-moving party. *Amabile v. Auto Kleen Car Wash*, 249 Pa.Super. 240, 376 A.2d 247 (1977); *Bowman v. Sears Roebuck*, 245 Pa.Super. 530, 369 A.2d 754 (1976); *Husak v. Berkel, Inc.*, 234 Pa.Super. 452, 341 A.2d 174 (1975). In the instant case, therefore, I address the question of whether, as a matter of law, the contract exculpated appellee.

"Generally speaking, an exculpatory clause is valid if: (a) 'it does not contravene any policy of the law, that is, if it is

from falling and that these bindings will not release under ALL circumstances and are no guarantee for my safety.

"I furthermore release Mitchell and Ness from any liability for damage and injury to myself or to any person or property resulting from the use of this equipment, accepting myself the full responsibility for any and all such damage or injury."

4. Appellee joined the following parties as additional defendants: G. P. I., Inc., Head Ski Co., Division of A. M. F., Rieker Ski Equipment Corp. Neither the additional defendants nor Camelback Ski Corp. has appealed from the grant of summary judgment in favor of Mitchell and Ness.

5. The parties took depositions but never made them a part of the record.

not a matter of interest to the public or State. . . .'
(*Dilks v. Flohr Chevrolet*, 411 Pa. 425, 434, 192 A.2d 682
(1963) and authorities therein cited); (b) 'the contract is
between persons relating entirely to their own private af-
fairs' (*Dilks v. Flohr Chevrolet*, supra, page 433); (c) 'each
party is a free bargaining agent' and the clause is not in
effect 'a mere contract of adhesion, whereby [one party]
simply adheres to a document which he is powerless to alter,
having no alternative other than to reject the transaction
entirely' (*Galligan v. Arovitch*, 421 Pa. 301, 304, 219 A.2d 463
(1966))." *Employers L.A.C. v. Greenville B. Men's A.*, 423
Pa. 288, 291–292, 224 A.2d 620, 622–623 (1966); *Dilks v.
Flohr Chevrolet*, supra. However, even if the clause is
generally valid, Pennsylvania case law requires that the
exculpatory clause meet certain additional standards. "Such
standards are: (1) contracts providing for immunity from
liability for negligence must be construed strictly since they
are not favorites of the law (*Galligan v. Arovitch*, supra, 421
Pa. 303, 219 A.2d 463; *Crew v. Bradstreet Co.*, 134 Pa.
161, 169, 19 A. 500 (1890)); (2) such contracts 'must spell out
the intention of the parties with the greatest of particulari-
ty' (*Morton v. Ambridge Borough*, 375 Pa. 630, 635, 101 A.2d
661 (1954)) and show the intent to release from liability
'beyond doubt by express stipulation' and '[n]o inference
from words of general import can establish it' (*Perry v.
Payne*, 217 Pa. 252, 262, 66 A. 553 (1907)); (3) such contracts
must be construed with every intendment against the party
who seeks the immunity from liability (*Crew v. Bradstreet*,
supra, 134 Pa. 169, 19 A. 500); (4) the burden to establish
immunity from liability is upon the party who asserts such
immunity (*Dilks v. Flohr Chevrolet*, supra, 411 Pa. 436,
192 A.2d 682)." *Employers L.A.C. v. Greenville B. Men's A.*,
supra 423 Pa. at 292, 224 A.2d at 623. In *Crew v. Brad-
street*, supra, the contract provided "that the company shall
not be liable for any loss or injury caused by the neglect or
other act of any officer or agent of the company in procur-
ing [financial information]." By strictly construing the con-
tract, the Supreme Court held that "this contract provides
for exemption from the negligence of the officers and

agents of the company, but not from its own." 134 Pa. at 169, 19 A. at 500. Following the precedent of *Crew v. Bradstreet*, Pennsylvania courts have frequently held that in order to exculpate oneself from the results of one's own misconduct, the contract must be clear and unequivocal. *Employers L.A.C. v. Greenville B. Men's A.*, supra; *Galligan v. Arovitch*, supra; *Dilks v. Flohr Chevrolet*, supra; *Perry v. Payne*, supra.

In the case at bar, the exculpatory clause in the rental agreement states: "I furthermore release Mitchell and Ness from any liability for damage and injury to myself or to any person or property resulting from the use of this equipment, accepting myself the full responsibility for any and all such damage or injury." This clause does not involve the public interest; it is a contract between private parties relating solely to their own affairs. Each party to the contract was a free bargaining agent and there is no allegation of coercion. Therefore, the contract is generally valid.

However, I must now measure the clause against the additional standards set forth above. The clause at issue is a general one which does not specifically exculpate Mitchell and Ness for its own negligent conduct. If appellee intended to exculpate itself from its own negligence, it should have clearly and explicitly so stated in its contract. It did not do so. I cannot infer that appellee intended such a release when the contract does not specifically so provide. Reading the clause strictly and with every intendment against appellee, I find that Mitchell and Ness failed to exempt itself explicitly from liability for its own negligent conduct.

Moreover, a close scrutiny of the clause in the instant case reveals that it exculpates Mitchell and Ness only from liability for damage resulting from *the use of the equipment*. (emphasis added). In *Darrow v. Keystone Stores, Inc.*, 365 Pa. 123, 74 A.2d 176 (1950), plaintiff-lessee sued defendant-lessor for damages suffered in a fire negligently caused by defendant. The lease contained an exculpatory clause which stated that the lessee expressly agreed to assume all liability of accident or damage due to said occu-

pancy. The Supreme Court reversed the entry of judgment on the pleadings and held that the clause was in no way sufficiently specific to relieve the defendant from liability due to his own negligence. Moreover, the clause exculpated defendant only for damage *due to said occupancy.* (Emphasis added) The damage therein arose from defendant's negligence not from plaintiff's occupancy of the apartment. Applying *Darrow* to the case at bar and viewing the pleadings in the light most favorable to appellant, I find that the damage in the instant case did not result from the use of the equipment, but from the alleged negligence of appellee. Because the exculpatory clause applies only to damage resulting from the use of the equipment and does not apply to damage arising from appellee's negligence, it does not release appellee under the facts presented.

Finally, the alleged negligence may have occurred prior to the signing of the rental agreement, when Mitchell and Ness allegedly failed to adjust the ski bindings. The clause in question does not specifically exempt appellee for negligent conduct which occurred prior to entering into the agreement and there is no indication that the parties intended that result. When parties enter into a lease agreement they are contemplating a status which will be created in the future. If a party seeking immunity from liability for negligent conduct intends exculpation for past as well as future negligent conduct it is his obligation to express that intent in the agreement in an explicit manner. Appellee has failed to do so. See *Kotwasninski v. Rasner*, 436 Pa. 32, 258 A.2d 865 (1969). Therefore, the clause fails for this reason as well.

In sum, viewing the evidence in the light most favorable to appellant, I believe that, as a matter of law, the clause does not exculpate appellee because: (1) it does not explicitly release appellee from its own negligence, (2) the damage did not arise from appellant's use of the equipment and, (3) the alleged negligence may have occurred prior to entering into the agreement. Having decided that appellee is not entitled to judgment as a matter of law, I must determine whether a triable issue of fact exists. In the instant case,

appellant alleged that appellee negligently rented skis, boots, and bindings, to appellant which were not of safe design, fit, assembly, and adjustment. Appellant also alleged that as a result of appellee's negligence, he suffered serious injuries. The parties have not addressed the issue of negligence[6] in their affidavits or interrogatories. Therefore, I would reverse and remand for further proceedings.

SPAETH, J., joins in this dissenting opinion.

---

**6.** The parties have not addressed the other two causes of action pleaded by appellant. See footnote 2 above.