## Miele v. Chadds Ford Ski School

*Eugene H. Evans*, for plaintiffs.
*M. Scott Gemberling*, for defendant Chadds Ford
Ski School, Inc.

SMITH, *J.*, June 6, 1985 — This matter comes
before this court on defendant Chadds Ford Ski
School, Inc. t/a Chadds Peak's motion for summary
judgment. This is an action in trespass arising out
of a skiing accident in which plaintiff was injured
while skiing at defendant's facility. The issue which
this court addresses is whether an exculpatory re-
lease agreement signed by plaintiff is a valid and en-
forceable contract relieving defendant, Chadds
Peak, from any and all liability resulting from plain-
tiff's skiing accident at defendant's facility.

Plaintiff and his wife, along with their two chil-
dren, were on a ski package weekend sponsored by
Downingtown Inn. Plaintiff and his family drove in
their family car from their home in Bayport, New
York, to participate in the recreational package
weekend.

After spending the night at the Inn, the family de-
parted in their car the following morning for a day of
skiing at the nearby Chadds Peak Ski Area. Upon
arriving at the facility, plaintiff proceeded to rent

skiing equipment for himself as well as for the rest of his family. During this transaction plaintiff was issued a rental agreement, which he and his family were required to sign before receiving the rented skiing equipment provided by defendant. The language as appeared in the agreement is as follows:

### "AGREEMENT — READ CAREFULLY

"It is hereby agreed by and between Chadds Peak, its principals, agents, servants, employees and assigns, hereinafter referred to as Chadds Peak and any and all persons renting equipment from same or in any manner using or occupying any and all facilities of same for any reason whatsoever, hereinafter referred to as customer, that in consideration of the loan of equipment, if any, and the use of the facilities provided by Chadds Peak that the customer agrees to pay charges fixed for same and the customer agrees in further consideration that:

"1. The equipment rented, if any, has been or will be carefully inspected by the customer prior to use of same and the customer agrees that same is in good working order and free from defects of any kind or nature and the customer agrees to promptly return the equipment after use thereof and further agrees to pay for any loss thereof or damage thereto; and that

"2. All risks involved in the use of the equipment and or facilities are assumed by the customer who further agrees to forever release Chadds Peak and save Chadds Peak harmless from any claims for injury or damage to person or property in any way resulting from the use of the equipment and/or facilities."

Plaintiff and each member of his family signed the release agreement. Thereafter, plaintiff utilized a

lift ticket which provided in pertinent part: "The person using this ticket assumes all risks of personal injury or loss of or damage to property. . . ."

Plaintiff began skiing at approximately 11:00 a.m. At approximately 2:00 p.m. plaintiff fell while on a downhill run and sustained a broken left leg.

Based upon the above facts as supported by the pleadings and depositions, defendant has asked this court to dismiss the matter upon a motion for summary judgment. The Pennsylvania Rules of Civil Procedure state that summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035(b).

In making his motion, defendant relies heavily upon our Superior Court's decision in Greenblatt v. Big Boulder Ski Shop, Inc. (no. 02254 Philadelphia, 1984, filed January 9, 1985). In Greenblatt, appellant, en route to a ski vacation received and signed a "Rental Agreement and Receipt" concerning the arrangement for the rental of ski equipment from appellee. The agreement contained exculpatory language which appellant admittedly failed to read. Upon arriving at the ski area, appellant was outfitted with appellee's rental equipment and began her day of skiing. Later that afternoon, appellant fell, her ski binding failed to release, and she injured her left leg. Appellee moved for summary judgment based upon the signed release and the lower court granted the motion. On appeal, the Superior Court affirmed the lower court's decision.

Based upon Greenblatt, defendant argues that the motion for summary judgment should be granted because the signed agreement relieves defendant

from any and all of plaintiff's claims. In his argument defendant claims that plaintiff admits to signing the agreement, thus there is no issue as to its existence. Defendant further argues that plaintiff's failure to read the agreement is irrelevant according to Greenblatt. See Id. at 4. Also, defendant claims that plaintiff is bound by the signed release according to Greenblatt unless the agreement is unenforcable as an adhesion contract. Defendant argues that the release in this case is similar to the release in Greenblatt and thus equally enforceable. Defendant claims the agreement is not an adhesion contract because here, as in Greenblatt, the agreement concerns a "purely recreational activity" and plaintiff was a free and equal bargaining agent, who was at liberty to accept or reject this particular recreational activity over another. See Greenblatt at 6. Defendant also cites Zimmer v. Mitchell and Ness, 253 Pa. Super. 474, 385 A.2d 437 (1978), aff'd per curiam, 490 Pa. 428, 416 A.2d 1010 (1980), as further support for his position.

Plaintiff's opposition to the motion for summary judgment is primarily based upon this court's opinion in Sumner v. Eastern Ski Tours (no. 92 May term, 1981, Court of Common Pleas of Chester County, filed May 16, 1984).

In Sumner, plaintiff was injured while on a ski package weekend in New York. In that case, defendant provided the transportation from West Chester to New York. While en route to the ski resort, plaintiff was handed and signed a "Rental Form" required for the rental of defendant's ski equipment which, in addition, contained a release agreement relieving defendant from any liability for personal injuries resulting from the use of defendant's equipment and/or facilities. Relying on the signed release, defendant moved for summary judg-

ment. This court denied the motion on two major grounds. First, this court held that since plaintiff had paid for the trip prior to boarding the bus for the weekend trip, his promise to release defendant from liability, made while enroute to New York, was questionably unenforceable for lack of consideration. Secondly, this court held that plaintiff in Sumner might not have been a "free bargaining agent" at the time he signed the release because if he had refused to sign he would have forfeited the entire weekend and would have been stranded in New York for two days. Based upon these grounds the motion for summary judgment in Sumner was denied. Plaintiff now argues that Sumner is dispositive as to the case at hand.

Additionally, plaintiff argues that unlike the release forms at issue in both Greenblatt and Zimmer which were crystal clear and specific (language denying liability for malfunctioning of releasable bindings), the present release agreement is so broad and general as to fail to reflect any intent of waiver and thus should be regarded as meaningless.

Finally, plaintiff cites two cases, Dilks v. Chevrolet, 411 Pa. 425, 192 A.2d 682 (1983), and Galligan v. Arovitch, 421 Pa. 301, 219 A.2d 463 (1966), in support of the proposition that contracts with exculpatory clauses are disfavored by courts and should be invalidated as unenforceable adhesion contracts when there is clearly no equal bargaining power between the parties.

Plaintiff's reliance on Sumner v. Eastern Ski Tours is misfounded. The Sumner decision is distinguishable from the case at hand. Whereas in Sumner there was a lack of consideration for the subsequent release since the entire ski package was paid for in advance, here plaintiff signed the release contemporaneously with his tender of payment for

the use of defendant's equipment and facility. Thus the consideration is evident in the bargaining process. Also, the question of whether plaintiff was a "free bargaining agent" is not an issue in the present case as it was in Sumner. Whereas in Sumner the plaintiff had no alternative transportation and would have in fact been stranded in New York had he refused to sign the release, here plaintiff had his own car and could have easily left the ski area had he refused the terms of the rental agreement. Due to these distinguishable facts, Sumner is not controlling in the case at hand.

This court is not persuaded by plaintiff's argument that defendant's release agreement form is too general and vague and incapable of alerting a potential signer to the consequences of his signature. The language of the release clause, in this court's opinion, is clear and definite and gives adequate notice and warning to one signing the agreement. Likewise, the clause is conspicuous and would place a reasonable person on notice as to its contents and purpose.

Finally, plaintiff's reliance on Dilks and Galligan is also misplaced. Though the two cases do declare exculpatory clauses invalid on the basis of the adhesive nature of the contracts, the facts are not on all fours with the case presently before us. Those two cases deal with releases in landlord-tenant agreements which are clearly adhesive in their nature. There is a great difference between the bargaining power of a tenant pressured to find an adequate piece of real estate and a recreational skier who is on a weekend pleasure jaunt.

This court is convinced that the Superior Court's decision in Greenblatt v. Big Boulder Ski Shop, Inc. is controlling authority. Accordingly, this

## ORDER

And now, this June 6, 1985, we grant defendant's, Chadds Ford Ski School, Inc., t/a Chadds Peak, motion for summary judgment.