## Galisson v. Shawnee Mountain Ski Area

C.P. of Monroe County, no. 791 Civil 1995.

*Joseph A. Holko,* for plaintiffs.
*Hugh M. Emory,* for defendants.

MILLER, *J.,* May 16, 1996—This action arises from a March 23, 1993 downhill skiing accident at Shawnee Mountain Ski Area when plaintiff Robert Galisson fell while using skis, boots, bindings and poles rented to him by the defendants. Plaintiff alleges that upon falling, his left ski binding malfunctioned and/or failed to properly release the ski, causing a fracture to his left leg. Filed on March 21, 1995, the complaint names both Shawnee Mountain Ski Area, also known as Shawnee Mountain Management Inc., and Watershed Realty Co., as defendants. The complaint has 12 counts: one count each of negligence, warranty, and products liability against each defendant and six corresponding loss of consortium counts. Defendants allege that this action is barred pursuant to the rental agreement and receipt agreement signed by the plaintiff and a lift ticket purchased by the plaintiff which purport to release the defendants from liability. The agreement provides as follows:

*"I accept for use as is the equipment listed on this form* and accept full responsibility for the care of the

equipment while it is in my possession, and agree to reimburse Watershed Realty Co., as owner and property manager if any, their successors, assigns and agents for any loss or damage other than reasonable wear resulting from use.

"I understand that the ski boot binding system furnished herewith *is designed to reduce the risk or degree of injuries* from falling and that these bindings will not release under all circumstances and are no guarantee for my safety. *Properly adjusted ski boot binding systems of current technology cannot protect against knee injuries.*

"I furthermore release Watershed Realty Co. as owner and its property manager if any, their successors, assigns and agents and/or any employee thereof from any liability for damage and injury to myself or to any person or property resulting from the use of this equipment, accepting myself the full responsibility for any and all such damage or injury.

"I furthermore release Shawnee Mountain Ski Area and/or any employee thereof from any liability for damage and injury to myself or to any person or property allegedly resulting from the use of this equipment, the use of any other equipment rented to me or provided to me by Shawnee Mountain Ski Area or from the performance of any work, in the nature of binding adjustment or otherwise, performed by Shawnee Mountain Ski Area on any ski equipment I may be using, accepting myself the full responsibility for any and all such damage or injury." (emphasis in original)

Defendants filed this motion for judgment on the pleadings on February 2, 1996. Following the submission of briefs and oral argument on April 1, 1996, this matter is now ripe for disposition.

Before addressing the moving party's specific prayers for relief, we must review the general rule applicable to motions for judgment on the pleadings. The Pennsylvania Rules of Civil Procedure provide in pertinent part as follows:

"Rule 1034. Motion for judgment on the pleadings

"(a) After the pleadings are closed but within such time as not to delay trial, any party may move for judgment on the pleadings."

The underlying purpose of a motion for judgment on the pleadings is to permit the court to conduct an overall examination of the legal sufficiency of the pleadings in order to determine if judgment should be entered prior to trial. *Bensalem Township School District v. Commonwealth,* 518 Pa. 581, 544 A.2d 1318 (1988); *Kosor v. Harleysville Mutual Insurance Company,* 407 Pa. Super. 68, 595 A.2d 128 (1991).

Our standard of review in ruling upon a motion for judgment on the pleadings is identical to that exercised upon a demurrer: we are to determine whether, on the facts averred, the law says with certainty that no recovery is possible for the non-moving party. *Id.* We are to grant such a motion only in those cases in which, upon the pleadings and documents properly attached, it appears that there are no material issues of fact, but, rather, only a controlling question of law which is ripe for decision and, under such circumstances, a trial would be a fruitless exercise. *Id.; Keil v. Good,* 467 Pa. 317, 356 A.2d 768 (1976).

In ruling upon a motion for judgment on the pleadings filed, as in the case at bar, by a defendant, the court must consider all of the pleadings and responsive pleadings filed by the moving and non-moving parties, including the complaint, answer, new matter and reply to new matter. *Herman v. Stern,* 419 Pa. 272, 213 A.2d

594 (1965); *Eberhart v. Nationwide Mutual Insurance Company,* 238 Pa. Super. 558, 362 A.2d 1094 (1976). We must accept as true all well-pled statements of material fact pled by the non-moving party and all reasonable inferences deducible therefrom as well as, in such a case, the admissions contained in plaintiff's reply to new matter. *Evans v. Marks,* 421 Pa. 146, 218 A.2d 802 (1966). Furthermore, the court will construe as admissions plaintiff's failure to deny those allegations contained in defendant's new matter to which a response is required. *Keil v. Good, supra.* However, no party will be deemed to have admitted either conclusions of law or unjustified inferences. *Youngman v. CNA Insurance Co.,* 401 Pa. Super. 381, 585 A.2d 511 (1991), *allocatur denied,* 527 Pa. 637, 592 A.2d 1304 (1991).

With this standard in mind, we first look to the products liability count. Defendants ask us to grant them judgment because of the release in the agreement. Plaintiffs argue that the agreement contravenes the public policy behind the Restatement (Second) of Torts, Section 402A, which provides in pertinent part:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer . . . if

"(a) the seller is engaged in the business of selling such a product, and

"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold."

Defendants argue that by signing the agreement, plaintiff assumed the risk of any injuries incurred in the course of skiing. Although it has several different types, assumption of the risk in its simplest form means

that "the plaintiff has given his express consent to relieve the defendant of an obligation to exercise care for his protection, and agrees to take his chances as to injury from a known or possible risk." *Howell v. Clyde,* 533 Pa. 151, 154 n.2 620 A.2d 1107, 1108 n.2 (1993). The result is that the defendant is no longer under a duty to protect the plaintiff. *Id.* Such express assumption of risk is addressed in section 496B of the Restatement (Second) of Torts. *Id.* Section 496B provides:

"Express assumption of risk

"A plaintiff who by contract or otherwise expressly agrees to accept a risk of harm arising from the defendant's negligent or reckless conduct cannot recover for such harm, unless the agreement is invalid as contrary to public policy."

Assumption of the risk remains a viable affirmative defense in Pennsylvania in cases involving "express assumption of risk, or cases brought pursuant to 402A, . . . or cases in which assumption of risk is specifically preserved by statute." *Howell, supra* at 162 n.10, 620 A.2d at 1113 n.10. Our legislature has expressly preserved assumption of the risk as a defense to actions for downhill skiing injuries at 42 Pa.C.S. §7102 which provides:

"(c) Downhill skiing

"(1) The general assembly finds that the sport of downhill skiing is practiced by a large number of citizens of this Commonwealth and also attracts to this Commonwealth large numbers of nonresidents significantly contributing to the economy of this Commonwealth. It is recognized that as in some other sports, there are inherent risks in the sport of downhill skiing.

"(2) The doctrine of voluntary assumption of risk as it applies to downhill skiing injuries and damages is not modified."

The plaintiffs argue that public policy forbids an effective assumption of risk in a consumer-based strict liability transaction and cite *Keystone Aeronautics Corp. v. R.I. Enstrom Corp.,* 499 F.2d 146 (3rd Cir. 1974). In *Keystone,* the Third Circuit Court of Appeals held that the Pennsylvania Supreme Court was likely to adopt comment "m" to section 402A of the Restatement (Second) of Torts (1965), which reads as follows:

"The consumer's cause of action does not depend upon the validity of his contract with the person from whom he acquires the product, and it is not affected by any disclaimer or other agreement, whether it be between the seller and his immediate buyer, or attached to and accompanying the product into the consumer's hands."

The *Keystone* court went on to note that if a disclaimer in a preprinted form sales contract "would be effective to limit liability under section 402A, then obviously sellers would utilize such devices to nullify their responsibility." *Id.* at 149. Thus, "it would appear that for reasons of social policy, strict liability should not be disclaimed in 'garden variety' consumer transactions." *Keystone Aeronautics Corp. v. R.J. Enstrom Corp.,* 364 F. Supp. 1063 (W.D. 1973), *affirmed in relevant part, Keystone,* 499 F.2d at 148-49.

We note that *Keystone* was decided prior to our legislature's passage of the Skier's Responsibility Act in 1980. Since Pennsylvania considers downhill skiing to merit special attention, we do not find that this falls into the "garden variety" consumer transaction contemplated by *Keystone.* The plaintiffs are unable to provide and we are also unable to discover any appellate

authority in Pennsylvania which has adopted the rationale of *Keystone* in downhill ski cases and we will not do so.

Plaintiffs also argue that in promoting, marketing, selling, renting and/or supplying the ski equipment used in the accident, the defendants expressly and impliedly warranted the equipment. In pertinent part, the Pennsylvania Commercial Code requires that an express remedy be created as follows:

"(1) An affirmation of fact or promise made by the lessor to the lessee which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods will conform to the affirmation or promise.

"(2) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods will conform to the description." 13 Pa.C.S. §2A210(a).

As the agreement signed by plaintiff meets none of these requirements, we find the equipment was not covered by an express warranty.

Plaintiffs further allege a claim for breach of the implied warranties of merchantability and fitness for a particular purpose. The relevant portion of the Pennsylvania Commercial Code provides: "Unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like 'as is' . . . if in writing and conspicuous." 13 Pa.C.S. §2A214(c)(1). The first sentence of the agreement is underlined, *"I accept for use as is the equipment listed on this form."* We find that this is a conspicuous written disclaimer of any implied warranties.

Finally, we find that defendants' motion with respect to plaintiffs' claim of negligence must be granted on

the basis of *Zimmer v. Mitchell and Ness,* 253 Pa. Super. 474, 385 A.2d 437 (1978), *affirmed per curiam,* 490 Pa. 428, 416 A.2d 1010 (1980). In *Zimmer,* plaintiff executed a "rental agreement and receipt" at the time he rented ski equipment at Camelback Ski Area. While skiing, his ski bindings failed to release during a fall causing him to be injured.

Our Superior Court discussed exculpatory clauses and the criteria for determining their validity. After examining the rental agreement, which is very similar to the one before us, the court found the agreement to be valid and a clear expression of an intent to exculpate defendant. We find no significant difference between the agreement in *Zimmer* and the case sub judice.

Plaintiff also urges us to find that defendants' actions rose to the level of "gross negligence," thereby invalidating even an effective release. "Gross negligence" is defined as a failure to perform a duty in reckless disregard of the consequences or with such want of care and regard for the consequences as to justify a presumption of willfulness or wantonness. *Williams v. Civil Service Commission,* 9 Pa. Commw. 437, 306 A.2d 419 (1973), *affirmed,* 457 Pa. 470, 327 A.2d 70 (1974). After a careful review of the complaint filed by plaintiffs, we can find no allegations of gross negligence pled.

Since we find that on the facts averred no recovery is possible as a matter of law, we enter the following order.

## ORDER

And now, May 16, 1996, defendants' motion for judgment on the pleadings is granted.