Express Financial Services Inc. v.
Gateway Abstract Inc.

C.P. of Monroe County, no. 9144 CV 2001.

*Melissa A. Swauger,* for plaintiff.
*James V. Fareri,* for defendant.

CHESLOCK *J.,* August 20, 2004—

## FINDINGS OF FACT

(1) Plaintiff Express Financial Services Inc. is a corporation in the business of securing title insurance and acting as a settlement agent in real estate transactions.

(2) Defendant Gateway Abstract Inc. is a corporation who provides services, including title searches, with respect to real estate transactions.

(3) In the early 1990s, Express has used Gateway to conduct settlement on its behalf, which included attending and witnessing closings, explaining mortgages and other documents.

(4) Since approximately 1994, Express requested Gateway to conduct title report searches for it.

(5) On April 27, 1998, Express ordered a current owners title search for Edward Lindor at the property address of 298 Lower Seese Hill Road, Candensis, Pennsylvania, from Gateway.

(6) The current owner search on Lindor was requested via facsimile request form, which had been regularly used between Express and Gateway in their past business dealings.

(7) Gateway completed a title search and forwarded the results to Express in a title report dated April 29, 1998.

(8) The title report form contained the following language:

"This title search is based upon the examination of recorded evidence from courthouse records. This is not a title policy nor is it a commitment for title insurance. Upon payment, liability is assumed by Gateway Abstract Inc., for any negligence, mistakes or omissions as an abstractor and only for the time period searched. This search excepts any defects, liens, encumbrances, adverse claims or other matters, as a result of or caused by computer error, program error, programmer error, or programming limitations, including but not limited to any misspellings or derivations of the surname when searching any courthouse automated system liability hereunder is assumed by the company for its negligence, mistakes or omissions in a sum not exceeding the cost of the search."

(9) Among other things, Express requested that Gateway search for outstanding mortgages issued on the Lindor property.

(10) The title report prepared by Gateway indicated the only mortgage holder was CoreStates Mortgage Services Corporation.

(11) In April 1998, Lindor requested a mortgage on his property from TMS Mortgage Inc., d/b/a The Money Store in the amount of $220,000.

(12) The title search completed by Gateway missed a mortgage held by Champion Mortgage Servicing Corp. Inc., in the amount of $292,000, recorded in the Monroe County Recorder's office on November 13, 1997.

(13) Express paid Gateway $40 for the search performed on the Lindor property.

(14) Gateway did not provide title insurance or a binder for title insurance on the Lindor property.

(15) Express provided title insurance for the Lindor property in 1998.

(16) Express had an underwriting contract with Chicago Title Insurance Company in regards to title policies it wrote in 1998.

(17) Champion Mortgage Servicing Corp. Inc. foreclosed on the Lindor property and a sheriff's sale held on October 25, 2001, divested The Money Store of its mortgage on the Lindor property.

(18) As a result of the missed mortgage on the Lindor title search, Express paid Chicago Title Insurance Company $220,000.

## DISCUSSION

Express brought this action to recover the sums paid to Chicago Title Insurance Company as a result of Gateway's failure to disclose an outstanding mortgage of Champion Mortgage Servicing Corp. Express hired

Gateway to perform a title search of the premises owned by Lindor. Express maintains that the parties entered into a "contract" and that Gateway is in breach of that contract for failing to disclose the Champion mortgage in the title search results.

To determine if an enforceable contract exists, all essential elements of a contract must be present. *Johnston the Florist Inc. v. Tedco Construction Corp.*, 441 Pa. Super. 281, 657 A.2d 511 (1995). The essential elements of an enforceable contract are: "[1] whether both parties have manifested an intent to be bound by the terms of the agreement; [2] whether the terms are sufficiently definite; and [3] whether consideration existed." *Id.* at 291, 657 A.2d at 516. There is no dispute between the parties that a written contract does not exist.

While a written contract does not exist which would specifically set forth each party's respective duties and responsibilities, Express maintains that a contract, nevertheless, did exist between the parties. Gateway, on the other hand, denies the existence of a contract. Therefore we must now look to whether an oral contract existed between the parties.

To establish the existence of an oral contract, one must show that (1) both parties have manifested an intent to be bound by the terms of the agreement; (2) the terms of the agreement are sufficiently definite to be specifically enforced; and (3) there is a mutuality of consideration. *Redick v. Kraft Inc.*, 745 F. Supp. 296 (E.D. Pa. 1990), citing *Channel Home Centers v. Grossman*, 795 F.2d 291, 298-99 (3d Cir. 1986). The existence and terms of an oral contract must be established by clear and precise

evidence. *Id.,* citing *Browne v. Maxfield,* 663 F. Supp. 1193, 1197 (E.D. Pa. 1987).

Instantly, we believe that both parties manifested an intent to be bound by the terms of an agreement or contract. When Express would send a request, whether by facsimile or other means, Gateway would conduct a title search on the property. This is clearly demonstrated by the number of searches requested from Express and completed by Gateway. Robert Sumbury, a branch manager for Express, testified that Gateway performed approximately 416 title searches for Express in 1997 and approximately 381 title searches in 1998. Based upon the testimony and the volume of title searches requested and performed, we believe that the parties had an ongoing agreement or contract.

Next, we find that the terms of the agreement are sufficiently definite to be specifically enforced. Express, in making their request to Gateway, expected a report which set forth the mortgages, judgments, liens, encumbrances, etc., regarding a particular property. In return, Gateway would provide a title search report which set forth that information. Mr. Sumbury testified that there were no written terms or correspondence containing terms between the parties, only the title search form provided by Gateway. Michele Roberts, president of Gateway, testified that Gateway would use its forms in sending a title search report to Express. Gary Roberts further testified that the fee for the title searches was fixed at $40. Mr. Roberts did not testify as to how the fee was fixed. We will not surmise whether Express set the fee or if the fee was negotiated between the parties. Further, Mr. Roberts testified that the limitation of liability language was

contained on Gateway's form and that no one from Express objected to Gateway using its own forms for the reports.

Finally, we find that there was a mutuality of consideration. Express received the title search information it requested and Gateway was paid for providing such information. Express presented sufficient evidence that the parties orally agreed to terms of an agreement, which constituted an oral contract. We find that Express has established by clear and precise evidence the existence of an oral contract.

Next we must consider whether the language contained in the title report form limits the liability of Gateway. Gateway maintains that it is only liable for an amount not exceeding the cost of the search. Express maintains that the language is ambiguous because a plain reading of the limitation suggests that the limitation applies only to errors while searching any courthouse automated system.

The limitation of liability language contained in the report is akin to an exculpatory or indemnity clause. The Superior Court has stated that, "[w]hile an exculpatory clause . . . differs somewhat from an indemnity clause . . . there is such a substantial kinship between both types of contracts as to render decisions dealing with indemnity clauses applicable to decisions dealing with exculpatory clauses and vice versa." *Warren City Lines Inc. v. United Refining Company,* 220 Pa. Super. 308, 311 n.1, 287 A.2d 149, 150 n.1 (1971). In determining the validity of an exculpatory clause, it must not contravene any policy of law and it must be a contract between indi-

viduals relating to their private affairs. *Zimmer v. Mitchell and Ness,* 253 Pa. Super. 474, 478, 385 A.2d 437, 439 (1978). Each party must be a free bargaining agent, and not simply one drawn into an adhesion contract, with no recourse but to reject the entire transaction. *Id.* As we have set forth above, the parties entered into a valid contract. The report sent by Gateway set forth terms for the contract. Although Express does not argue that a contract did not exist, it does not want to be bound by the limitation of liability language contained in Gateway's written report.

The specific language sets forth that Gateway is liable for negligence, mistakes or omissions for the time period searched. Gateway agrees that it was negligent in failing to include the Champion mortgage in its report to Express. The second part of the language indicates that Gateway "excepts" any defects, liens, encumbrances, adverse claims or other matters as a result of computer, program, programmer or programming error. "Excepts" has been defined as "to leave out" or "with the exclusion of." Webster's II New Riverside University Dictionary, 1984. The residue of the language in the last sentence of Gateway's form states that liability hereunder is assumed by the company for its negligence, mistakes or omissions in a sum not exceeding the cost of the search. Express argues in its trial brief that if clear ambiguity exists with regard to the language . . . then an issue of fact is present. We do not believe that an ambiguity exists because the language clearly excepts any error in the courthouse records. The language is clear that the company will be liable for its own negligence, mistakes or omissions in a sum not exceeding the cost of the search. We

are required to use common sense in interpreting the language contained in the form. *Id.* Even if an issue of fact is present, we are the fact-finder. The credibility of witnesses and the weight to be accorded their testimony is for the trial judge as the finder of fact. *Rosine v. Gerlach,* 173 Pa. Super. 240, 98 A.2d 436 (1953). The court in a non-jury trial is free to believe some, all or none of the proffered testimony. *Psi Upsilon v. University of Pennsylvania,* 404 Pa. Super. 604, 591 A.2d 755 (1991). We find the testimony of Gary Roberts credible that the form was never objected to by Express. We find that the liability of Gateway is limited by the language contained in the title search form.

## CONCLUSIONS OF LAW

(1) Express and Gateway were parties to an oral contract.

(2) Gateway was negligent in failing to disclose the Champion mortgage to Express in the title search report dated April 29, 1998.

(3) The contract terms included a limitation of liability as set forth in the title search form used by Gateway.

(4) Gateway's liability to Express is in a sum not to exceed the cost of the search.

## VERDICT

And now, August 20, 2004, this court finds in favor of the plaintiff, Express Financial Services Inc., and against the defendant, Gateway Abstract Inc., in the amount of $40 plus record costs.